**In re MILLER & RHOADS,
INC., Debtor.**

**MILLER & RHOADS, INC. SECURED
CREDITORS' TRUST, Plaintiff,**

v.

**ROBERT ABBEY, INC.,
et al., Defendants.**

Bankruptcy No. 89–01763–RT.
Adv. No. 90–3183–RT.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Nov. 2, 1992.

Andrew J. Dolson, Christian, Barton, Epps, Brent & Chappel, Richmond, VA, for plaintiff.

Leonard D. Levine, Pender & Coward, P.C., Virginia Beach, VA, for defendants.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This matter comes before the court on the complaint of the Miller & Rhoads, Inc. Secured Creditors' Trust ("trust") seeking recovery of prepetition transfers to Landmark Communications, Inc., trading as The Virginian–Pilot and The Ledger–Star ("Landmark") pursuant to 11 U.S.C. §§ 547 and 550. For the reasons stated in this memorandum opinion the court finds the trust is entitled to recover preferential transfers totalling $145,716.00.

### Findings of Fact

Miller & Rhoads, Inc., filed its voluntary petition under chapter 11 of the bankruptcy code on July 28, 1989. On November 27, 1989, the debtor filed its initial plan of liquidation. Thereafter, the debtor's First Amended and Restated Plan of Liquidation ("plan") was confirmed in June 1990. Pursuant to the terms of the plan, certain of the debtor's assets, including all preference claims, were transferred to the trust. The trust filed its complaint against Landmark on September 17, 1990.

During the 90 days preceding the filing of its bankruptcy petition the debtor made four transfers ("transfers") to Landmark in the aggregate amount of $239,979.74.[1] The transfers were made to Landmark on account of antecedent debts owed to Landmark arising from the publication of advertisements.

Three of the transfers were made in July 1989 immediately prior to debtor's bankruptcy filing. These payments were pursuant to an agreement between Landmark and the debtor, memorialized in a letter dated July 7, 1989 ("letter agreement"), from Robert M. Harding, the debtor's Senior Vice President for Sales Promotion, to Ken Eichelberger, Landmark's credit manager. The letter agreement contemplated a new arrangement requiring "weekly" payments to retire debtor's past due balance.

The other transfer was made by a check which was dated May 5, 1989, but not paid to Landmark until June 7, 1989. This payment was for charges incurred in April 1989. Jonathan H. Browne, the debtor's former chief financial officer testified that although the check had been issued on May 5, it was withheld because of the debtor's precarious financial condition. Eventually it was delivered to Landmark in response to repeated demands for payment.

From June 8, 1989, through the petition date, Landmark ran $94,264.00 worth of newspaper advertisements that were never paid for by the debtor. The parties have stipulated this amount constitutes new value provided by Landmark pursuant to 11 U.S.C. § 547(C)(4).

All four of the transfers described above were made while the debtor was insolvent, and it is not disputed that Landmark received more than it would have received in a hypothetical chapter 7 liquidation. *See Miller & Rhoads, Inc. Secured Creditors' Trust v. Robert Abbey, Inc. et al., and Airways Industries, Inc., et al. (In re Miller & Rhoads, Inc.)*, 146 B.R. 950 (Bankr. E.D.Va.1992). Unsecured creditors, including Landmark, would have enjoyed no distribution from the debtor's liquidation.

### Discussion and Conclusions of Law

11 U.S.C. § 547(b) provides:

1. The transfers were made as follows:

| Check No. | Check Date | Check Paid | Check Amount |
| --- | --- | --- | --- |
| 502513 | May 5, 1989 | June 7, 1989 | $89,546.17 |
| 506010 | July 6, 1989 | July 12, 1989 | $50,000.00 |
| 506092 | July 21, 1989 | July 25, 1989 | $50,000.00 |
| 510878 | July 14, 1989 | July 21, 1989 | $50,433.57 |

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

In this case, the requirements of § 547(b) were either stipulated to by the parties or found by the court in its previous memorandum opinion. Therefore, the evidence adduced at trial involved the statutory defenses to preference claims. Landmark asserts that some or all of the transfers are insulated from avoidance by the "ordinary course" defense allowed under 11 U.S.C. § 547(c).

11 U.S.C. § 547(c)(2) provides:

The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the *ordinary course* of

business or financial affairs of the debtor and the transferee;

(B) made in the *ordinary course* of business or financial affairs of the debtor and the transferee; *and*

(C) made according to *ordinary business terms.*

*See* 11 U.S.C. § 547(c)(2) (emphasis added).

However, in the court's view the ordinary course defense is unavailable to shelter any of the transfers here.

■ First, the facts establish that the transfers were not ordinary. The approximately $150,000.00 paid pursuant to the letter agreement was archetypally preferential. The debtor, which previously had been paying on a monthly invoice basis, was required to make large weekly payments on the eve of bankruptcy to retire a past due balance. These letter agreement payments were unrelated to any particular invoice. Moreover, these payments were required to be made by express delivered check.[2]

■ The facts surrounding the approximately $89,000.00 payment of June 7, 1989, indicate this payment was likewise extraordinary. The debtor issued the check to pay its April 1989 debt but withheld it for over a month due to financial difficulties. It was only in response to Landmark's repeated telephone calls that the check was released. Accordingly, this payment also constitutes an archetypical avoidable preference.

■ Second, Landmark has failed to establish the ordinary course defense as a matter of law. Section 547(c)(2) presents a three part conjunctive test, and Landmark bears the burden of proof as to each part by a preponderance of the evidence. 11 U.S.C. § 547(g); *see e.g., In re Food Catering & Housing, Inc.,* 971 F.2d 396, 398 (9th Cir.1992); *Logan v. Basic Distribution*

---

**2.** I do not find persuasive Landmark's contention that the letter agreement signalled the beginning of a new, and therefore "ordinary," relationship, in which the debtor paid for advertising on a weekly basis. Weekly payment was required during the debtor's reorganization case

for the same reason it was demanded in the preference period: Landmark was aware of and concerned by the debtor's precarious financial condition.

*Corp. (In re Fred Hawes Organization Inc.)*, 957 F.2d 239, 243–44 (6th Cir.1992); *J.P. Fyfe, Inc. of Fla. v. Bradco Supply Corp.*, 891 F.2d 66, 70 (3rd Cir.1989); *WJM, Inc. v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996, 1010–11 (1st Cir.1988).

 Although Landmark presented testimony as to § 547(c)(2)(A) and (B), no evidence concerning "ordinary business terms" (i.e., industry standards) was presented in accordance with § 547(c)(2)(C). Preference defendants invoking § 547(c)(2) must establish that: 1) the debt and its payment are ordinary in relation to past practices between the debtor and this particular creditor, *and* 2) the payment was ordinary in relation to prevailing business standards. *See In re Food Catering & Housing, Inc.*, 971 F.2d 396, 398 (9th Cir. 1992); *In re Fred Hawes Organization Inc.*, 957 F.2d 239, 243–44 (6th Cir.1992); *J.P. Fyfe, Inc. of Fla. v. Bradco Supply Corp.*, 891 F.2d 66, 70 (3rd Cir.1989); *WJM,*

*Inc. v. Massachusetts Dept. of Public Welfare*, 840 F.2d 996, 1010–11 (1st Cir.1988); *In re Magic Circle Energy Corp.*, 64 B.R. 269, 272–73 (Bankr.W.D.Okla.1986); *In re Production Steel, Inc.*, 54 B.R. 417, 423–24 (Bankr.M.D.Tenn.1985); *contra Lovett v. St. Johnsbury Trucking*, 931 F.2d 494 (8th Cir.1991); *Jones v. United Savings and Loan Ass. (In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.)*, 151 B.R. 492 (W.D.Ark.1993). In the absence of such evidence, the court cannot determine whether the transfers deviated from industry norms. Accordingly, Landmark has failed as a matter of law to establish the ordinary course defense provided for in 11 U.S.C. § 547(c)(2).[3]

As agreed by the parties, the total new value credit to which Landmark is entitled is approximately $94,264.00. Subtracting this new value from the total of the transfers, the court finds that the trust is entitled to recover $145,716.00 in avoidable

---

**3.** The parties stipulated to the "new value" amounts to which Landmark is entitled under § 547(c)(4) of the Bankruptcy Code. *See In re Meredith Manor, Inc.*, 902 F.2d 257 (4th Cir. 1990).

The following chart reflects the dates and amounts of the new value credits to which Landmark is entitled:

| DATE | PREFERENCE AMT. | NEW VALUE AMT. | PREFERENCE BAL. |
|---|---|---|---|
| June 7 | $89,546 | —— | $ 89,546 |
| 8 | —— | $16,332 | $ 73,214 |
| 9 | — | $ 4,551 | $ 68,663 |
| 11 | — | $14,374 | $ 54,289 |
| 15 | — | $16,402 | $ 37,887 |
| 23 | — | $ 1,834 | $ 36,053 |
| 25 | — | $ 4,550 | $ 31,503 |
| 28 | — | $ 1,345 | $ 30,158 |
| 29 | — | $ 9,046 | $ 21,112 |
| 30 | — | $ 4,020 | $ 17,092 |
| July 2 | — | $ 4,698 | $ 12,394 |
| 9 | — | $ 5,442 | $ 6,952 |
| 11 | — | $ 3,572 | $ 3,380 |
| 12 | $50,000 | $ 3,573 | $ 49,807 |
| 16 | —— | $ 3,148 | $ 46,659 |
| 21 | $50,434 | —— | $ 97,093 |
| 23 | —— | $ 1,377 | $ 95,716 |
| 25 | $50,000 | —— | $145,716 |

preference transfers. As is within its discretion, the court will award in addition prejudgment interest in the amount provided by law pursuant to 28 U.S.C. § 1961(a). *See In re H.P. King Company, Inc.,* 64 B.R. 487 (Bankr.E.D.N.C.1986).

A separate order has been entered.