In re The S. GALESKI OPTICAL COMPANY, Debtor.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS, ex rel. the S. GALESKI OPTICAL COMPANY, Plaintiff,

v.

ESTATE OF Edward W. GALESKI, Carrie T. Galeski, Trustee, Joseph T. Galeski, Jr., Trustee, Carrie T. Galeski, and Central Fidelity Bank, Trustee, Defendants.

Bankruptcy No. 91–33699–S.
Adv. No. 93–3119–S.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 21, 1994.

Stanley K. Joynes, III, LeClair, Ryan, Joyunes, Epps & Framme, P.C., Richmond, VA, for plaintiff.

Deborah S. O'Toole, Cowan & Owen, P.C., Richmond, VA, for defendants.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter was initially brought before the Court by The Official Committee of Unsecured Creditors for the S. Galeski Optical, Co. ("The Committee"), who by order of this Court substituted The S. Galeski Optical Company ("The Debtor"), as plaintiff in the above-referenced adversary proceeding. The Committee asks for summary judgment on its complaint for avoidance and recovery of certain alleged preferential transfers between the debtor and the Estate of Edward W. Galeski, Carrie T. Galeski, Trustee for the Estate, Joseph S. Galeski, Jr., Trustee for the Estate, Carrie T. Galeski, individually, and Central Fidelity Bank, Trustee for the Estate (collectively "The Galeski Estate"). In turn, the Galeski Estate makes a cross-motion for summary judgment in the same action. This Court has jurisdiction over the matter by virtue of 28 U.S.C. § 1334 and Title 11 of the United States Code and by order of reference entered by the Judges of the United States District Court for the Eastern District of Virginia. Upon consideration of the arguments of counsel and evidence presented at the April 19, 1994 hearing, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

On April 15, 1991, the Galeski Estate was awarded judgment in the amount of $42,518.09 by the Circuit Court for the City of Richmond against the debtor because of the debtor's default on an obligation owed to the Galeski Estate. In order to satisfy the judgment, two of the Galeski Estate's trustees, Carrie Galeski and Joseph Galeski, caused a writ of fieri facias to be issued, evidently with the intention of garnishing two of the debtor's bank accounts located at Sovran Bank, account number 7915–5643 and account number 9933–4415. The balances in the accounts in late May were:

For account number 7915–5643:

| Date | Balance |
| --- | --- |
| May 28, 1991 | $7,592.54 |
| May 29, 1991 | 5,755.22 |
| May 30, 1991 | (9,505.40) |
| May 31, 1991 | (9,562.91) |

For account number 9933–4415:

| Date | Balance |
| --- | --- |
| May 28, 1991 | $2,678.10 |
| May 29, 1991 | 5,950.78 |
| May 30, 1991 | 9,593.38 |
| May 31, 1991 | 3,291.33 |

In addition, between May 28, 1991 and May 31, 1991, the parties have stipulated that deposits totaling $58,032.76 were made into account number 7915–5643 and deposits totaling $14,784.86 were made into account number 9933–4415.

The garnishment writ and summons were delivered to the Sheriff of the City of Richmond on May 28, 1991. Under Virginia law, the lien on the bank accounts was perfected upon delivery of the writ to the Sheriff.[1] On June 6, 1991, the Sheriff served the summons on Sovran Bank where the debtor maintained its payroll and operating accounts. Also on June 6, 1991, the debtor made a payment to the Galeski Estate in the amount of $4,000 in attempt to partially satisfy the Circuit Court's judgment. The parties have agreed that this $4,000 transfer was preferential and thus should be avoided. On July 25, 1991, the Circuit Court ordered that an additional $35,567.00 be paid from the Sovran Accounts

---

1. Va.Code Ann. § 8.01–501 states:

*Lien of fieri facias on estate of debtor not capable of being levied on.*—Every writ of fieri facias shall, in addition to the lien it has under §§ 8.01–478 and 8.01–479 on what is capable of being levied on under those sections, be a lien from the time it is delivered to a sheriff or other officer to be executed, on all the personal estate of or to which the judgment debtor is, or may afterwards and on or before the return day of such writ become, possessed or entitled, in which from its nature is not capable of being levied on under such sections, except such as is exempt under the provisions of Title 34, and except that, as against an assignee of any such estate for valuable consideration, the lien by virtue of this section shall not affect him unless he had notice thereof at the time of the assignment.

Va.Code Ann. § 8.01–501 (Michie 1992).

to the Galeski Estate. Finally, on August 30, 1991, the debtor filed for Chapter 11 protection.

## Conclusions of Law

In this case the Court must decide whether as a matter of law the July 25, 1991 $35,567.00 transfer ("The $35,567.00 Transfer") is preferential. Addressing when summary judgment motions should be granted, Federal Rule of Civil Procedure 56(c), incorporated into the Bankruptcy Code by Bankruptcy Rule 7056, states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(c). Determining materiality relies on an examination of the relevant substantive law:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The standard for summary judgment has been held to mirror that of a directed verdict's criterion where a "trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. (citations omitted) If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed". Id.

An inquiry into whether the Committee or the Galeski Estate deserves summary judgment necessarily involves examining whether the Committee has established as a matter of law each of the elements contained in 11 U.S.C. § 547(b)[2]. In its motion for summary judgment, the Galeski Estate admits that the $4,000.00 payment made on June 6, 1991 was a preferential transfer. The Galeski Estate's Motion for Summary Judgment, ¶ 3 (filed March 21, 1994). This statement implicitly acknowledges that the $4,000.00 transfer met all § 547(b)'s elements. Because the $4,000.00 and the $35,567.00 transfers were payments on the same debt to the same creditor, the Galeski Estate's admission that the $4,000.00 transfer was preferential may also assist, in part, in the determination of whether $35,567.00 may likewise be so characterized. For example, the Court may take as admitted that the $35,567.00 payment was to or for the benefit a creditor, the test under § 547(b)(1), since both payments went to the same entity. Second, the Court may deem admitted the fact that the $35,567.00 transfer was made for or on the account of an antecedent debt owed by the debtor before the transfer was made, the test under § 547(b)(2), since both payments were made on the same loan. Finally, it may be assumed that if a $4,000.00 transfer enabled the creditor to receive more than such creditor would receive if the case were a case under chapter 7 of this title, the transfer had not been made, and such creditor received payment of such debt to the extent provided by the provisions of this title, the tests under § 547(b)(5), then the $35,567.00 payment enabled the Galeski Estate to also reap these benefits. As a result, the

---

**2.** 11 U.S.C. § 547 states in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of filing of the petition; or

(B) between ninety days and one year before the date of the filing or the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title,

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

only remaining elements in contention are whether, under § 547(b)(4), the debtor made the $35,567.00 transfer within 90 days of filing the petition and whether, under § 547(b)(3), the debtor was insolvent when the transfer was made.

### 1. 11 U.S.C. 547(b)(4) Analysis

■ Since the Galeski Estate is not an "insider" as it is defined under 11 U.S.C. § 101(31), Section 547(b)(4) states that in order for the $35,567.00 transfer to be preferential it must have taken place within ninety days of the debtor's bankruptcy filing. Here the parties have stipulated that the preference period began June 1, 1991, ninety days prior to the August 30, 1991 bankruptcy filing and some three days after the garnishment lien was perfected. The Galeski Estate has alleged that the transfer of the debtor's assets occurred when the Sheriff received the writ of fieri facias, perfecting the garnishment lien pursuant to Virginia Code Ann. § 8.01–501. This would place the date of the transfer outside the ninety day preference period. In contrast, the Committee argues that the Court should not only look to the date the lien was perfected but also to when the actual transfer took place and how they were funded. Because the $35,567.00 transfer was funded by preference period deposits the Committee argues that it was preferential. It also argues that the transfers do not "relate back" to the date of the lien's perfection. As support for their arguments, each party cites this Court's decision in *In re Jones,* 47 B.R. 786 (Bankr.E.D.Va.1985).

After a review of that decision, this Court is inclined to agree more with the interpretation advocated by the Committee, although not adopt it *in toto.* In *Jones,* a trustee, acting under § 547(b), sought to avoid a transfer caused as a result of a garnishment lien. Unlike the instant case, the creditor had both perfected the garnishment lien and had served the lien upon the bank outside the ninety day preference period. After examining the definition of a transfer as enunciated in 11 U.S.C. § 101(48) and its interplay with § 547, the Court found in effect two transfers: first, the perfection of the lien and second, the transfer of funds as a result

of the lien. This Court upheld the first transfer, the perfection of the lien, stating:

> [T]he acquisition by [the creditor] of a garnishment lien on a date no later than August 19, 1983 was a "transfer" within the meaning of the preference statute and was perfected at the time of the delivery of the writ of *fieri facias* to the sheriff inasmuch as delivery of the writ to the sheriff creates the lien and establishes its priority over all subsequent execution liens. (citations omitted) Although the lien was a "transfer" and therefore subject to scrutiny under the provisions of § 547(b), the Court finds in this case that due to the perfection of the lien itself occurring outside of the 90 day preference period the acquisition of the lien by Simpson was not in and of itself, a preference and, thus, should not be avoided.

*Id.* at 789. Here, as in the *Jones* case, the Galeski Estate perfected the lien before the preference period began, and thus effected its first transfer on May 28, 1991, three days before the start of the preference period. Consequently the garnishment lien itself is valid for the purposes of § 547(b).

However, the *Jones* case spoke of a second transfer occurring when the creditor in that case actually received the bounty of his garnishment lien, namely some $3,000. Unlike the first transfer, the act of the garnishee paying the garnishor took place well within the ninety day preference period. For the following reasons, the Court found this second transfer to be preferential stating:

> This Court believes that a "transfer" under a garnishment lien on a bank account cannot occur until funds are actually deposited into the debtor's account. *Consequently, this Court finds that only those funds present in the debtor's bank account on the date the garnishment summons was served coupled with all other funds likewise deposited more than ninety days prior to the date of the filing of the petition in bankruptcy constitute valid transfers not avoidable by the trustee in bankruptcy as a preference pursuant to § 547(b).* To the extent that funds were deposited into the debtor's garnished bank account within ninety days prior to bankruptcy, those

funds would be a preference and may be recovered by the trustee for the benefit of the creditors of the estate.

*Id.* at 790 (emphasis supplied). Consequently, *Jones* stands for the proposition that while a creditor may have a valid garnishment lien for purposes of § 547(b) by serving it on the sheriff before the preference period begins, any transfers via that garnishment which are funded by deposits made after the preference period begins are deemed preferential if those transfers meet all the other requirements of § 547(b). In short, *Jones* not only examines the timing of the perfection of the garnishment lien but also the source of the monies used to satisfy that lien. Unlike the creditor in *Jones,* however, the Sheriff in the instant case did not serve Sovran Bank with the garnishment lien until five days after the preference period began.

▮ Despite this factual difference, the Court may still use *Jones* to hold that most of the $35,567.00 transfer is preferential since it was funded with deposits made within the preference period. On the last day before the preference period began, May 31, 1991, account 7015–5643 had a negative balance of $9,562.91. On that same day, account 9933–4415, which the $35,567.00 was later to come from, had a positive balance of $3,291.33. While the Galeski Estate, through its perfected garnishment lien, had a right to these monies since they were placed in the account via pre-petition period deposits, it had no way of gaining access to the funds because the sheriff had not delivered the summons to the garnishee. Because this access depends not upon the actions of the garnishing creditor but on the offices of a government official, the creditor should not be totally without remedy when it perfects its lien pre-preference period but obtains service through the sheriff on the garnishee during the preference period. Expanding upon the Court's decision in *Jones* to address the facts present in the instant case, the Court holds that positive balances present in a debtor's garnished account or accounts on the last day of the pre-preference period may be used to offset preferential transfers from that same account or accounts when the garnishor has succeeded in perfecting his lien on these accounts before the preference period begins but the sheriff serves the lien on the garnishee during the preference period. Accordingly, $3,291.33 may serve as an offset, reducing the potential preference from $35,567.00 to $32,275.67.

The Committee states that the Galeski Estate has no offset rights in this case since the aggregate balance in the accounts was in the negative. However, the Committee refers to no authority for this proposition and the Court is unable to cite to any case or statute authorizing such action.

▮ Attention should also be paid to the deposits that were credited to the account during the post-perfection, pre-preference period (i.e. May 28—May 31). Deposits totaling some $72,817.62 were made to the accounts during this time period. Again, under Virginia law, once a garnishment lien is perfected, the garnishor is considered to have a senior lien as to all subsequent assignees except where the later assignee had no notice of the garnishment summons. Applying the law to the instant case, if one of the payees on checks drawn on either of the two accounts had knowledge of the Galeski Estate's garnishment, then the funds he received from the tainted transaction with the debtor become recoverable by the Galeski Estate. The Galeski Estate uses this possibility to argue that the Court should not grant the Committee's summary judgment motion. The Galeski Estate argues that this Court should hear evidence on whether or not the payees had actual knowledge of the garnishment. However, that matter is an issue arising between the Galeski Estate and those parties who were the recipients of the payments in an independent action pursuant under Virginia Code Ann. § 8.01–501.

Consequently, for the reasons stated above, if it can be shown that the debtor was insolvent, $32,275.67 of the $35,567.00 transfer is preferential since that portion was funded with deposits made during the ninety day preference period.

### 2. *11 U.S.C. § 547(b)(3)*

▮ The other remaining issue is whether the debtor was insolvent at the time of the $35,567.00 transfer. Defined by 11 U.S.C.

§ 101(32)[3] and presumed during the ninety days before the bankruptcy under 11 U.S.C. § 547(f)[4], the issue of insolvency is the Galeski Estate's to refute. This it fails to do. It first admits that the debtor was insolvent as of June 6, 1991, several weeks before the July 25, 1991 $35,567.00 transfer, by conceding that the June 6 $4,000.00 transaction was preferential. Secondly, at the hearing on the summary judgment motions, it failed to effectively rebut the § 547(f) presumption; instead merely asserting, unsupported by affidavits, pleadings, etc., that the debtor was not insolvent at the time of the $35,567.00 transfer. *See* Defendants' Reply Memorandum (filed March 31, 1994) and Transcript of April 19, 1994 Hearing (AP# 93–2119). Consequently, this Court finds that the debtor was insolvent at the time the $35,567.00 was transferred.

In conclusion, because as a matter of law $32,275.67 of the $35,567.00 transfer meets all the elements of a preference under 11 U.S.C. § 547(b), summary judgment be given to the Committee and that portion of the transfer avoided.

■ The Committee also asks that the Court award it prejudgment interest on the avoided transfers, reasoning that the Galeski Estate has had the use of the funds received through the preferential transfers since Summer 1991. While the Galeski Estate agrees with the Committee that the Court may in its discretion award prejudgment interest[5], it asks the Court not to do so. The Galeski Estate argues that since it incurred legal fees and costs in excess of $3,900.00 in order to collect the debt rightfully owed to it, no prejudgment interest should be awarded. In the alternative, it asks that should the Court decide to award prejudgment interest, it do so only from August 19, 1993, the filing date of the adversary proceeding which is the subject of these summary judgment motions. Addressing the power of bankruptcy courts to award prejudgment interest, the Fourth Circuit has stated: "It is well-settled that bankruptcy courts have discretion to award prejudgment interest in § 547 preferential transfer actions, and to compute that *interest from the date of demand* for the return of the transferred funds." (Emphasis added.) *In re Cybermech, Inc.,* 13 F.3d 818, 822 (4th Cir.1994). In *Cybermech,* the Fourth Circuit said that the creditor had no more right to keep the accrued interest earned off the preferential transfers than it had to keep the principal. As rationale for its decision, the Fourth Circuit reasoned that if the preferential transfers had not been made, the debtor's estate would have benefitted from the earned interest and that the interest payment serves to compensate the debtor's estate for the creditor's use of the funds withheld. As an additional ground for the decision, the court stated that the payment of interest supports the prime bankruptcy policy of equal distribution among creditors.

This Court recognizes that Cybermech was in a Chapter 7 liquidation mode and that the payment was voluntarily made to the creditor while in this case the debtor is in a Chapter 11 proceeding in which a plan has been confirmed and the recovery is one in which the debtor involuntarily suffered a preference. Despite these differences, this Court finds that *Cybermech* is still the controlling law. Thus, the Galeski Estate is liable for interest on both preferentially-transferred amounts and said interest is to be calculated by the parties from the date of the first demand made by the Committee. After reviewing the record, the first undisputable evidence that a demand for payment occurred was at the time the Committee filed its complaint on

---

**3.** 11 U.S.C. § 101(32) in pertinent part states:

(32) "insolvent" means—

(A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title;

**4.** 11 U.S.C. § 547(f):

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

**5.** *See In re Miller & Rhoads, Inc.,* 153 B.R. 725, 729 (Bankr.E.D.Va.1992).

August 19, 1993; consequently, it is this date from which interest shall accrue.

The parties are hereby ordered to draft an order conforming to this Memorandum Opinion and submit it to the Court within twenty days.