**In the Matter of David and Hannah ARMSTRONG, Debtors.**

**Bankruptcy No. BK86–83714.**

United States Bankruptcy Court,
D. Nebraska.

Aug. 30, 1996.

Thomas D. Stalnaker and Robert J. Becker, Omaha, NE, for Philip M. Kelly, Chapter 7 Trustee.

Jerrold L. Strasheim and Mary Leiter Swick, Omaha, NE, for Community First State.

Michael G. Helms, Phoenix, AZ, for Debtors.

Philip M. Kelly, Chapter 7 Trustee, Scottsbluff, NE.

Patricia Dugan, United States Trustee, Omaha, NE.

## *MEMORANDUM*

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

Before the court is the Motion for Summary Judgment filed by Community First State Bank f/k/a The Abbott Bank f/k/a/ Bank of Hemingford (the "Bank") concerning the Trustee's objection to the Bank's claim. Summary judgment is entered in favor of the Bank.

## FACTS

Prior opinions in this case set forth many of the pertinent facts in this proceeding. *See In re Armstrong,* 931 F.2d 1233 (8th Cir. 1991) (hereafter *"Armstrong I"*) *affirming* 93 B.R. 197 (Bankr.D.Neb.1988), 97 B.R. 565 (Bankr.D.Neb.1989), *and* 127 B.R. 852 (D.Neb.1989); *see also Abbott Bank v. Armstrong,* 44 F.3d 665 (8th Cir.1995) (hereafter

"*Armstrong II* "). However, a brief summary of these proceedings is set forth below, as is a summary of the proceedings occurring in this case after *Armstrong II* and remand to the bankruptcy court. This case was assigned to me, after remand, upon recusal of Chief Judge Timothy J. Mahoney.

Early in this case the Bank successfully prosecuted an adversary proceeding under Bankruptcy Code § 727 and the debtors were denied a discharge due to prepetition transfers made by the debtors with the intent to hinder, delay or defraud creditors. The denial of discharge was affirmed upon appeal by the eighth circuit, *see Armstrong I.* After the eighth circuit's *Armstrong I* decision, the debtors filed an objection to the allowance the Bank's claim, asserting numerous grounds, including the existence of avoidable prepetition and postpetition transfers to the Bank and defective notice to the debtors and to the Trustee of the postpetition sale of some of the Bank's collateral. The debtors' chief objection was that the Bank waived its right to a deficiency claim under state law, because the Bank failed to give proper notice to the debtors and to the Trustee of a postpetition sale of hay as required in 1987 and 1988 under Nebraska UCC § 9–504(3). The bankruptcy court and district court sustained the debtors' objection to the Bank's claim under authority of UCC § 9–504(3), holding that the Bank's deficiency claim was not enforceable under Nebraska decisional law. On appeal, in *Armstrong II,* the eighth circuit reversed the district court and bankruptcy court, stating that, based on *Armstrong I,* the debtors were barred from objecting to the Bank's status as a creditor, since one of the elements necessarily determined in the section 727 action was that the Bank was a creditor of the estate. In *Armstrong II,* the debtors were precluded from objecting to the Bank's claim. As a result of this reversal, the debtors' objection to the Bank's claim stands as overruled and the trial court and district court ruling on the merits are, in effect, vacated.

It is important to note that in the trial court proceedings in *Armstrong II,* the debtors' attorney, Michael Helms, made a demand that the Trustee object to the Bank's claim. This demand was not a simple pro forma request or expedient request that the Trustee join in the debtors' objection. Debtors' counsel wrote a four page, single-spaced letter, Exhibit No. 146, to the Trustee making a formal demand that the Trustee object to the Bank's claim. The letter from debtors' counsel set forth in detail a statement of facts and law supporting the objection. It was a well-written exposition of the legal and factual basis for the debtors' objection to the Bank's claim. The facts and theories asserted in that letter were sustained by the trial court and district court in *Armstrong II.* But, as stated previously, the Eighth Circuit Court of Appeals reversed on other grounds. After consideration of the demand letter, the Trustee wrote a letter, Exhibit No. 150, to debtors' counsel and formally declined to file an objection to the Bank's claim stating that to do so would not be in the best interest of the bankruptcy estate. The Trustee's letter notes that the debtors' had already filed an objection to the Bank's claim and that another filing by the Trustee would be a duplication of effort. The record in this case indicates that copies of the debtors' objection to the Bank's claim (Fil. # 177), Amended Objection to Claim (Fil. # 194), and the Bank's response to these objections (Fil. # 181) were mailed to the Trustee. On this record, it is clear that the Trustee made a fully informed, independent decision not to object to the Bank's claim. Given the fact that the debtors were represented by experienced bankruptcy counsel with well-developed legal theories, it was reasonable for the Trustee to affirmatively decide, as he did, not to object to the claim of the Bank. The Trustee sought to avoid unnecessary litigation expenses. The Trustee was thus aware of the specific basis of the debtors' objections to the Bank's claim, the Trustee had standing to intervene in the contested matter or to file his own objection to the Bank's claim, the debtors demanded that the Trustee object to the Bank's claim, the Trustee duly considered the demand and voluntarily elected to take no action with respect to the objection to the Bank's claim.

After the *Armstrong II* decision and remand to the bankruptcy court, the debtors requested the Trustee to object to the Bank's claim on the theory that, while the debtors were barred from asserting the UCC § 9–

504(3) defense, the Trustee was not. When the Trustee refused, the debtors formally petitioned the bankruptcy court to appoint a special trustee to prosecute the objection to the Bank's claim, or in the alternative, to remove and substitute the Trustee (Fil. # 329). The Trustee resisted (Fil. # 331), citing various reasons for not objecting to the Bank's claim, including the Trustee's opinion that any objection to the Bank's claim was precluded by the *Armstrong II* decision. Chief Judge Mahoney issued an opinion (Fil. # 343) finding (1) that meritorious defenses existed to the Bank's claim, (2) that *Armstrong II* did not preclude the Trustee from objecting to the allowance of the Bank's claim, and (3) directing the Trustee to reconsider his position regarding filing an objection to the Bank's claim. In the event the Trustee did not file an objection by August 1, 1995, the opinion contemplates that a further order would be entered on the merits of the debtors' motion.

An objection to the Bank's claim was eventually filed by Tom Stalnaker as special counsel for the Trustee on November 1, 1995 (Fil. # 369). This occurred after months of litigation over employment of new special counsel for the Trustee, and another, ultimately unsuccessful, motion by the debtors to replace the Trustee [1]. The Trustee's objections to the Bank's claim are essentially the same as the debtors' prior objections. In fact, the first three paragraphs of the Trustee's objection track the debtors' objection verbatim. The remainder of the objection paraphrases the wording of the remainder of the debtors' prior objections.

On November 2, 1995, Chief Judge Mahoney recused himself from this case (Fil. # 373), so that the Trustee's objection to the Bank's claim could be litigated before a bankruptcy judge who had not previously ruled on the merits of the Bank's claim. This case was then assigned to me for further proceedings.

On December 11, 1995, debtors filed a Motion for Leave to Intervene (Fil. # 388), seeking to assist the Trustee in prosecuting the Trustee's objection to the Bank's claim. Debtors cited three grounds for intervention in their motion. First, the debtors have a direct interest in the outcome of the objection to the Bank's claim, in that if the objection is sustained, there may be surplus assets in the estate, which would be returned to the debtors. Second, the debtors cited their knowledge concerning the facts and basis for the objection to claim and previous success in opposing the Bank's claim. Third, the debtors again reasserted their contention that the Trustee has a conflict in opposing the Bank, as the Bank has continued to finance litigation by the Trustee. I denied the debtors' motion to intervene (Fil. # 405), finding that the special counsel was competent and employed especially to undertake the responsibility of prosecuting the objection to the Bank's claim. Further, I found that the debtors' intervention would unnecessarily complicate the proceedings and lead to increased delay and costs. Finally, I stated that intervention would allow the debtors to circumvent the eighth circuit's ruling in *Armstrong II*.

## LAW

Summary judgment is properly granted when the court determines that there is no

---

1. On July 13, 1995, the Trustee applied to the court (Fil. # 347) for authority to retain Tom Stalnaker as special counsel for the Trustee for the purpose of evaluating, and filing (as necessary) an objection to the claim of the Abbott Bank. The debtors objected (Fil. # 353). The Trustee responded (Fil. # 355), asserting that it was necessary to hire special counsel, so that an independent evaluation of Bank's claim could be made without suggestion of conflict of interest or bias on the part of the Trustee. When an objection to the Bank's claim was not filed by August 1, 1995, as required by Chief Judge Mahoney's order, the debtors filed a renewed motion for removal and substitution of Trustee (Fil. # 356). On August 31, 1995, Chief Judge Mahoney authorized the employment of Stalnaker as special counsel, and extended to October 31, 1995, the deadline for the Trustee to object, or indicate he would not object to the Bank's claim. (Fil. # 357). Chief Judge Mahoney deferred ruling on the debtors' renewed motion for removal of the Trustee pending the October 31, 1995, deadline (Fil. # 358), and, eventually denied this motion (Fil. # 371), in light of the Trustee's filing of an objection to the Bank's claim on November 1, 1995 (Fil. # 369). The debtors appealed this order (Fil. # 375), but the district court denied the appeal on the basis that Chief Judge Mahoney's decision was an unappealable interlocutory order (Fil. # 403).

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED.R.BANKR.P. 7056(c) (1995). In making these determinations, the court must view the facts in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). When a motion for summary judgment is made and supported as provided in Bankruptcy Rule 7056, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. FED.R.BANKR.P. 7056(e) (1995).

## DISCUSSION

The Bank seeks summary judgment based on six theories. First, the Bank asserts that *Armstrong II* constituted a final decision on the merits of the Bank's claim so the allowance of the Bank's claim should not be reconsidered. Second, the Bank alleges that res judicata, based on *Armstrong II,* bars the Trustee from objecting to the Bank's claim. Third, the Bank alleges that laches, estoppel, or waiver bar the Trustee's objection. Fourth, the Bank asserts that the Trustee's objections based on 11 U.S.C. § 502(d) are time barred, and, fifth, that the Trustee is not entitled to assert the lack of post-petition notice to debtors under the UCC as a defense to Bank's claim. Finally, the bank asserts that it would be improper to grant the Trustee's objection since the result would be to benefit the debtors, a party which is barred from seeking the same relief under *Armstrong II.*

I conclude that the Trustee is barred by principles of res judicata and waiver from objecting to the Bank's claim, and it is not necessary to rule on the remaining grounds asserted by the Bank. To the extent that Chief Judge Mahoney's rulings after remand are inconsistent herewith, these rulings were interlocutory and are set aside.

■ The parties dispute whether the principles of res judicata based on *Armstrong II*

bar the Trustee from objecting to the Bank's claim. The doctrine of res judicata bars claims where one suit follows another, if the following elements are met: (1) the first suit was based on proper jurisdiction; (2) the first suit resulted in a decision which was a final judgment on the merits; (3) both suits involve the same cause of action; and (4) both suits involve the same parties or their privies. *See Headley v. Bacon,* 828 F.2d 1272 (8th Cir.1987); *County of Boyd v. US Ecology, Inc.,* 858 F.Supp. 960 (D.Neb.1994), *aff'd* 48 F.3d 359 (8th Cir.1995). Res judicata bars relitigation of issues actually litigated or which could have been litigated in the first suit. *Federated Department Stores v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

The parties do not dispute that the Eighth Circuit Court of Appeals had jurisdiction to render the decision in *Armstrong II.*

■ The next issue is whether the *Armstrong II* decision was a prior judgment on the merits. The *Armstrong II* court found that the debtors' objection to the Bank's claim was barred by collateral estoppel, and reversed the judgment of the district court. *Armstrong II,* 44 F.3d at 667. The entry of a separate judgment stating that "all relief shall be denied," or equivalent words, constitutes a final judgment. FED.R.CIV.P. 58, 79(b); *US Ecology,* 858 F.Supp. at 967. "Any dismissal operates as an adjudication upon the merits unless the court specifies otherwise, or unless the dismissal is based upon a lack of jurisdiction, improper venue, or failure to join a party." *US Ecology,* 858 F.Supp. at 967 (citing FED.R.CIV.P. 41(b), other citations omitted). I conclude that *Armstrong II* constitutes a "judgment on the merits" for application of the doctrine of res judicata.

■ The next element of the doctrine of res judicata asks the court to determine whether there is sufficient similarity in the causes of action by the debtors in *Armstrong II* and the Trustee's objection to the Bank's claim in this proceeding. The court agrees with the Bank's assertion that the Trustee's objection to claim is virtually identical to the debtors' prior objections in *Armstrong II.*

The objections both seek disallowance of the Bank's deficiency claim and the same core of operative facts are involved in each objection. *See US Ecology,* 858 F.Supp. at 967–68. I conclude that the claims asserted in the Trustee's objection are identical to the debtors' objection to claim in *Armstrong II.* The fact that the debtors were barred from asserting the objection in *Armstrong II* does not change the underlying fact that the debtors' objection and the Trustee's objection are identical. The third element for application of res judicata is satisfied.

■ The fourth element required for application of res judicata deals with the question of whether the present action involves the same parties or their privies as were involved in *Armstrong II.* The Trustee was not a formal party to the contested matter involving the debtors' objection to the Bank's claim in *Armstrong II.* However, the record is clear that the debtors requested the Trustee to file an objection or join in their objection, and the Trustee refused. The issue is whether the Trustee was in privity with the debtors. Under the traditional common-law rule, res judicata only worked against those who were parties to an earlier suit. In a recent case, the Eighth Circuit Court of Appeals notes that this rule has been liberalized and that the focus of the res judicata inquiry has shifted from whether the party itself participated in prior litigation, to whether that party's interests were *fully represented* in the earlier case. *See County of Boyd v. US Ecology, Inc.,* 48 F.3d 359, 361 (8th Cir. 1995), *aff'g* 858 F.Supp. 960 (D.Neb.1994). The eighth circuit court in *U.S. Ecology* remarks:

> Of course, the general common law rule is that claim preclusion only works against those who had a fair chance to contest the earlier suit. This rule has in recent decades been liberalized, and the focus of the claim preclusion inquiry has in some instances shifted from whether a party itself participated in the prior litigation to whether the party's interests were fully represented in the earlier case, albeit by another.

*US Ecology,* 48 F.3d 359 at 361 (citations omitted). Thus, the focus of some courts has

shifted from the nature of the relationship *between* the parties, to the identity of their interests in the first litigation. *Id.* I conclude that the Trustee and the debtors are so closely related and their interests are so nearly identical that it is fair to treat them as the same parties for the purpose of res judicata.

The debtors' objection to the Bank's claim in *Armstrong II* alleged several theories on why the Bank's claim should be disallowed. First, the debtors' stated that the Bank's claim should be disallowed under § 502(d) of the Bankruptcy Code because the Bank was a transferee of a voidable transfer under § 547 of $3,200 from assets that were not secured by the Bank. Similarly, the debtors' alleged the Bank's claim should be disallowed under § 502(d) because the Bank was a transferee of a voidable transfer under § 547 of proceeds of the debtors' 1986 crops which were harvested less than 90 days prior to the debtors' bankruptcy proceeding. Thus, the Bank's security interest in the crops did not attach or become perfected until within 90 days of the debtors' bankruptcy. Third, the debtors' alleged that the Bank's claim should be disallowed under § 502(d) because the Bank was a transferee under § 549 of a voidable postpetition transfer regarding the debtors' 1986 crops. Fourth, the debtors' alleged that the Bank's deficiency claim on the sale of alfalfa should not be allowed because the sale was conducted without reasonable notice of the sale to the debtors and the Trustee. Finally, the debtors alleged that the Bank's deficiency claim on the sale of various machinery and equipment should not be allowed because the sale was conducted without reasonable notice of the sale to the debtors and the Trustee.

The objection by the Trustee in this proceeding is virtually identical to that of the debtors in *Armstrong II.* The first three theories on which the Trustee bases his objection are word for word the same as the debtors' earlier claims. The Trustee's final claim is just a rewording of the debtors' fourth and fifth claims, combining them into one claim. There is no difference between the objection of the Trustee made here and the prior objection made by the debtors.

The Trustee and the debtors had a common interest in having the objection to the Bank's claim sustained in *Armstrong II*. The Trustee has the duty to examine claims and object when warranted. The debtors, on the facts of this case, had a financial interest in the outcome of the objection. If the Bank's claim is disallowed, funds in the bankruptcy estate may exceed allowed claims. This means that creditors would be paid in full and that the surplus of funds, if any, would be paid to the debtors. Although, the debtors and the Trustee had different motivations for wanting the objection sustained they had a common interest in prosecution of the objection.

The district court in *US Ecology* was concerned with the relatedness of the parties in determining whether it was fair to treat them as the same parties for the purposes of res judicata. The Trustee and the debtors are closely related parties in this case. Both have standing to bring an objection and the Trustee is subrogated to all the claims and defenses available to the debtors under § 502. Although the Trustee declined to join the debtors in their objection after being formally requested to do so, his decision was quite reasonable in light of the fact that the debtors were already pursuing the matter. The debtors were represented by Mr. Helms who is an experienced bankruptcy attorney and who had well-developed legal theories on which to ground the debtors' objection. In the interest of avoiding duplication of effort and economizing the expenses to the bankruptcy estate, the Trustee knowingly declined to join the debtors in their objection. The Trustee's admission that he felt the debtors could adequately prosecute their objection and that his involvement would be duplicitous, admits the alignment of the Trustee's and the debtors' interests. The Trustee was fully aware of the litigation and refused to join the debtors, despite their demands. The Trustee's interests were so closely aligned to the debtors' interests litigated in *Armstrong II* that the Trustee did not join in for that very reason. The facts of this case, the identical interests of the parties in *Armstrong II*, and the Trustee's awareness of the litigation and refusal to join in, lead me to conclude that it is fair to treat the Trustee and the debtors "as the same parties for purposes of determining the preclusive effect of the [prior] judgment." *US Ecology*, 858 F.Supp. at 968. Therefore, the privity element is satisfied.

I conclude that the elements of res judicata are met in this case as applied to *Armstrong II* and conclude that the Trustee is barred from objecting to the Bank's claim.

*Waiver:*

▆ Waiver is a knowing and voluntary surrender or relinquishment of some right, benefit, or advantage. *See* BLACK'S LAW DICTIONARY (5th ed. 1968). Waiver may be found where a party fails to raise an issue, despite a full and fair opportunity to do so. *See e.g., In re Mathiason*, 16 F.3d 234 (8th Cir.1994). I find that the Trustee was given a full and fair opportunity to object to the Bank's claim in *Armstrong II* and he voluntarily chose not to do so. Instead, the Trustee chose to rely on the outcome of debtors' objection in *Armstrong II*. Therefore, I find that the Trustee's acts constituted a waiver of the right to object to the Bank's claim.

As stated above, the Trustee was fully aware of the litigation concerning the debtors' objection and refused to join in despite the debtors' demands he do so. He received copies of numerous documents in the contested matter. The Trustee stated that he did not join in the *Armstrong II* litigation because he felt it was unnecessary—the debtors were pursuing the matter and had the resources to adequately litigate the objection. The Trustee sought to avoid a duplication in effort and imposition of unnecessary expenses for the estate. These acts show that the Trustee voluntarily chose not to exercise the right to object, and that the Trustee decided to rely on the result reached by the debtors in the *Armstrong II* litigation. I conclude that the Trustee's refusal to object to the Bank's claim in the face of the debtors' demand to do so, and the Trustee's intent to rely on the outcome of the debtors' objection, constitute a waiver.

## CONCLUSION

Under the facts and circumstances of this case it is fair and equitable to dismiss the

Trustee's objection to the Bank's claim. The parties with a financial interest in the prosecution of the objection to the Bank's claim are the debtors, David and Hannah Armstrong. If the Trustee is permitted to prosecute the Bank's claim, it will effectively circumvent the rulings of the Eighth Circuit Court of Appeals that the debtors are precluded from objecting to the Bank's claim and may, in effect, financially reward the debtors with a distribution from the bankruptcy estate under circumstances where the Bank may be precluded from enforcing its deficiency claim. Let me elaborate.

The debtors will not receive a discharge in this case because the Bank successfully prosecuted an adversary proceeding under section 727 of the Bankruptcy Code. The court ruled that the debtors were not entitled to a discharge because they had made a transfer of assets with the specific intent to hinder, delay or defraud creditors. The Eighth Circuit Court of Appeals has ruled that the debtors may not object to the Bank's claim. The debtors are the party which have orchestrated and maneuvered the Trustee into objecting to the Bank's claim. As is detailed in this memorandum, after remand of the *Armstrong II* decision to the bankruptcy court the debtors took steps to compel the Trustee to object to the Bank's claim or alternatively to remove the Trustee and substitute another special counsel for purposes of prosecuting objections to claim. These motions were heard by Chief Judge Mahoney, before his recusal.

There is a possibility that property of the bankruptcy estate will be enhanced by the avoidance of certain prepetition transfers as a result of pending litigation. If that occurs, the property of the bankruptcy estate may have a value in excess of the total allowed claims excluding the Bank's claim. If the Bank's claim is disallowed, there will be sufficient assets to pay claims in full and the balance of funds will be distributed to the debtors. That would be an inequitable result, in my view. I conclude that such a result circumvents the ruling of the Eighth Circuit Court of Appeals and the order of the bankruptcy court barring discharge. The debtors should not be permitted to accom-plish indirectly, through the objection of the Trustee, that which the debtors have been precluded from doing directly.

A separate order will be entered consistent herewith granting summary judgment to the Bank overruling the Trustee's objection to claim.