### In re PROFESSIONAL COATINGS (N.A.), INC., Debtor.

**Bankruptcy No. 95–26580.
Adversary No. 96–2160.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

May 9, 1997.

Barry Spear, Winberg & Stein, Norfolk, VA, for debtor.

Jonathan Hauser, Christian & Barton, Norfolk, VA, for Tank Lines, Inc.

## MEMORANDUM OPINION AND ORDER

STEPHEN C. ST. JOHN, Bankruptcy Judge.

■ This matter comes before the Court on a Motion to Dismiss by the following defendants: CFE Equipment Corporation; Creekmore Hardware, Inc.: Duron, Inc.; Empire Machinery & Supply Corp.; Eure Distributing, Inc.; James McGraw, Inc.; Nelson Industrial Services, Inc.; Prime Co., Inc.; Safeware, Inc.; Schwerman Trucking Co.; Tank Lines, Inc.; Industrial Marine, Inc.; Virginia Materials and Supplies, Inc.; Diamond/Goodson equipment Company of Hampton, Inc.; and B & B Hose & Rubber, Inc. ("Defendants"). The Motion to Dismiss by the defendants was converted by the Court, *sua sponte*, to a Motion for Summary Judgment, and the Court allowed additional time for the parties to file supplemental briefs and replies directed to the Motion For Summary Judgment.[1] Having filed supporting affidavits and briefs within the parameters established by the Court, the defendants now move the Court to grant them summary judgment which would essentially dismiss the trustee's Complaint in this matter. After consideration of the evidence introduced at trial and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### Background [2]

In 1994, Professional Coatings (N.A.), Inc. ("PCNA") completed ship repair contracts as a subcontractor to Norfolk Shipbuilding and Drydock Corporation ("Norshipco").[3] In addition to PCNA, there were other suppliers and subcontractors ("sub-subcontractors"), including the defendants, who also completed repair work and service contracts as subcontractors to PCNA for the benefit of Norshipco and its customers.

On November 28, 1994, PCNA filed an "At Law" Motion For Judgment against Norshipco for $539,579.33 for work that it allegedly performed and completed on the ship repair contracts. Although most of the work had been finished on these contracts and Norshipco was prepared to disburse the funds for work performed by PCNA and the sub-subcontractors, two occurrences made Norshipco apprehensive about releasing the funds to PCNA. First, it was brought to Norshipco's attention that the party responsible for the subcontracting work may have actually been Professional Coatings Corp.

---

1. "Where a defendant files a motion to dismiss for failure to state a claim upon which relief can be granted, the district court may, *sua sponte*, convert the motion to one for summary judgment if (i) matters outside the pleadings are presented to the court, (ii) all parties are given notice that the dismissal motion may be treated as one for summary judgment, and (iii) all parties receive a reasonable opportunity to conduct discovery and present pertinent materials." *Onan v. County of Roanoke*, 52 F.3d 321 (4th Cir.1995), citing *Gay v. Wall*, 761 F.2d, 175, 177 (4th Cir.1985).

2. The Court relies upon the party's pleadings and exhibits as a basis for the Court's Findings of Facts.

3. The ship repair contracts underlying this dispute involved work performed on the *Cape Vincent, Coastal Eagle Point, Isherwood, Eckford,* and *Normandy.*

("PCC") or Professional Coatings, Inc. ("PCI"), rather than PCNA. Second, ostensibly concerned about ultimately being paid for their sub-subcontracting services, many of the sub-subcontractors, including the defendants, approached Norshipco about having the funds for their sub-subcontracting efforts paid directly to them rather than through PCNA as the subcontractor.

### Interpleader and Final Decree

As a result of the confusion as to which party performed the repair work and the sub-subcontractor requests for direct payment of the contract funds, Norshipco filed a Petition for Interpleader with the City of Norfolk Circuit Court on November 30, 1994 in the amount of $396,459.81. During the first half of 1995, Norshipco amended the interpleader complaint by depositing an additional $319,744.20 to make the total interpleader amount equal to $716,204.01. In conceding that it had no legal right to the funds, Norshipco filed the interpleader action requesting the state court to determine the rightful owner of the money.

PCC was the first to answer the interpleader petition and claimed that its name had been wrongfully used by the subcontractor without its permission. PCNA then made a general appearance by filing an answer to the interpleader petition requesting the court to pay the interpleader funds directly over to PCNA.[4] PCNA also responded that it and not PCC nor PCI was the party responsible for the work, that it was the rightful and lawful recipient to the contract funds, and that PCC and PCI had no legal rights to the contract funds.[5] Norshipco then moved to consolidate the interpleader action with PCNA's "At Law" Motion For Judgment. Subsequently, PCNA amended the November 28, 1994 Motion For Judg-

ment moving to have Norshipco compensate PCNA for the repair contracts so as to include parties which were named in the interpleader action as additional defendants. More pleadings and motions were filed by the various parties beginning in December 1994 and continuing throughout 1995. In June 1995, having consolidated the Interpleader action and PCNA's Motion For Judgment, the Norfolk Circuit Court set a trial date in the matter for December 7, 1995.

On the date of the trial, most of the parties appeared except for PCNA. Although it is not clear to this Court as to what precisely transpired during the hearing,[6] a final decree order ("final decree") was signed and entered by Judge Morrison of the Circuit Court of the City of Norfolk on December 7, 1995.

The final decree allocated the interpleader funds to the respective parties in the amount of $750,163.30 [7] and also stated that "[a]ny claims filed by defendant Professional Coatings (North America), Inc. are hereby dismissed with prejudice." The decree listed the following parties as those that would receive payment on their claims along with pre-judgment interest from December 7, 1994 and, in some instances, attorney fees, in the following amounts:

| | |
|---|---|
| Atlantic Coast Equipment Co., Inc. | $ 4,918.54 |
| B & B Hose and Rubber Co. | 8,414.33 |
| CFE Equipment Corporation | 11,077.02 |
| Creekmore Hardware, Inc. | 4,652.04 |
| Diamond/Goodson Equipment Company | 3,016.27 |
| Empire Machinery and Supply Corporation | 8,055.58 |
| Eure Distributing, Inc. | 3,744.12 |
| (continued) | |
| James McGraw, Inc. | 13,634.02 |
| Nelson Industrial Services, Inc. | 15,444.00 |
| Prime Co., Inc. | 87,660.55 |
| Safeware, Inc. | 17,558.37 |
| Schwerman Trucking Co. Of Va. | 4,653.87 |
| Tank Lines, Inc. (Papco Oil) | 58,700.07 |
| Virginia Materials and Supplies, Inc. | 134,525.39 |
| Duron, Inc. | 6,244.34 |
| Rental Tools and Equipment Co., Inc. | 8,745.29 |
| Industrial Marine | 150,612.97 |
| Image Rental, Inc. | 152,086.24 |
| Flying Fish Properties | 45,425.00 |

4. It is alleged and undisputed that PCNA was an active participant in the consolidated interpleader case.

5. The Court will adjudicate the issue of whether PCC, PCI, or PCNA is the subcontractor and legal beneficiary of the contract funds only to the extent that it impacts the merits of the summary judgment motion and the relevant underlying legal issues.

6. In its pleadings, counsel for the defendants described the trial on December 7, 1995 as a "truncated hearing."

7. The Court is uncertain about the origins of the $33,959.29 difference in the interpleader find amount of $716,204.01 and the final interpleader decree of $750,163.30. However, the discrepancy has no material impact on the Court's analysis or ruling.

| | |
|---|---|
| Attorney Fees [8] | 10,995.29 |
| Total claims paid pursuant to Interpleader Final Decree | $750,163.60 |

The interpleader allocations were disbursed to the parties by the Clerk shortly after the entering of the final decree.

## Bankruptcy Filing

Shortly after the decree was entered and on December 14, 1995, the requisite number of creditors filed an involuntary chapter 7 bankruptcy petition against PCNA. H.B. Price, III ("trustee") was appointed as the chapter 7 bankruptcy estate trustee in this often contentious bankruptcy case. The acrimony between the parties was exacerbated when the PCNA designated representative failed to appear at the scheduled creditors meetings scheduled in March and April of 1996. However, pursuant to a court order, counsel for PCNA eventually appeared to represent PCNA to permit the conduction of the first meeting of creditors.

## Chapter 7 Trustee Complaint

On August 30, 1996, a Complaint to Set Aside Preferential Transfers was filed by the trustee and became the underlying action for this summary judgment motion. In its Complaint, the trustee claims that the payments made to the aforementioned suppliers, sub-subcontractors, and the law firm pursuant to the December 7, 1995 final decree were actually recoverable preferential transfers under Bankruptcy Code §§ 547 and 550. The trustee alleges that these payments were made within 90 days of the petition filing, constituted antecedent debts owed by the debtor prior to the transfers being made, and were made while the debtor was insolvent. Finally, the trustee claims that the payments were made for the benefit of the defendants and allowed them to receive more than they would have in a liquidation under Chapter 7 had the transfers not been made. In summary, the trustee claims that the interplead-

er funds paid as a result of the interpleader decree are property of the estate earmarked for eventual distribution to creditors, are not property of the defendants, and should be returned to the estate with interest from the date of the transfers. The defendants' response to the trustee's complaint is embodied in its summary judgment motion and briefs.

## Motion For Summary Judgment By Defendants

The defendants make their motion for summary judgment based on three arguments.[9] The defendants' first basis for their summary judgment motion is that the trustee's complaint is barred by the doctrine of res judicata because it has already been adjudicated that the interpleader funds were previously and lawfully distributed to the defendants and that PCNA has no ownership interest in the interpleader funds. The defendants' second pillar for their summary judgment motion is that the doctrine of collateral estoppel precludes the trustee from relitigating the issue of whether the debtor has any ownership in the interpleader funds or any future claims to the funds. Finally, the defendants argue that the trustee's claim fails because the alleged transaction occurred more than 90 days prior to the debtor's bankruptcy filing, and therefore, the requirements of the Bankruptcy Code for avoiding a preferential transfer have not been met.

## CONCLUSIONS OF LAW

### I. Summary Judgment

In determining whether to grant summary judgment to a moving party, the Court looks to Rule 56(c) of the Federal Rules of Civil Procedure Rule which is made applicable to this proceeding by Federal Bankruptcy Rule 7056. Fed. R. Bankr. P. 7056. Under Rule 56, the Court will grant summary judgment if two elements are proven. First, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

8. The decree also directed the Clerk of the Court to pay Norshipco's law firm, Vandeventer, Black, Meredith & Martin ("Vandeventer"), the sum of $10,995.29 in legal fees. Vandeventer was also named by the trustee as a defendant in this matter; however, both parties settled out of court with Vandeventer returning $5,000 to the estate.

9. Presently, there is not pending any motion for summary judgment on the part of the trustee.

the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R.Civ.P. 56(c). The second requirement is that "the moving party is entitled to judgment as a matter of law." *Id.*

"The burden of establishing the nonexistence of a genuine issue of material fact rests on the moving party" and is proved by a preponderance of the evidence. *Maryland Highways Contractors v. State of Md.*, 933 F.2d 1246, 1252 (4th Cir.1991); *In re Speaks*, 193 B.R. 436, 440 (Bankr.E.D.Va.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). "In considering a motion for summary judgment, the Court should draw all inferences from the underlying facts in a light most favorable to the nonmoving party." *In re Speaks*, 193 B.R. at 440 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In determining whether to grant summary judgment, the Court is presented with several interpretations of the Rule 56 elements. With respect to the first element that there not be a genuine issue of material fact, the Supreme Court has defined a "material fact" as one that might affect the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). With respect to the second requirement that the moving party be "entitled to judgment as a matter of law," there are several threshold standards. The trustee's Complaint will not be dismissed via a granting of summary judgment unless the defendants "can prove no set of facts in support of [the trustee's] claim that would entitle [them] to relief." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, integral to the Court's summary judgment determination is that summary judgment can be granted only if "there can be but one reasonable conclusion as to the verdict." *In re S. Galeski Optical Co.*, 169 B.R. 360, 362 (Bankr.E.D.Va.1994)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Also, the Court will not grant summary judgment if "reasonable minds could differ as to the import of the evidence." *Id.*

("If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.").

## II. Section 547(b): Introduction

The trustee's Complaint, which is the subject of this summary judgment motion, is based upon the interplay of §§ 547 and 550 of the Bankruptcy Code. Section 547 of the Bankruptcy Code identifies the situations where a transfer of property by the debtor is avoidable by the trustee. The trustee bears the burden, by a preponderance of the evidence, of proving all the elements of an avoidable preferential transfer under § 547. 11 U.S.C. § 547(g); *In re Springfield Contracting Corp.*, 154 B.R. 214, 221 (Bankr. E.D.Va.1993). The specific portion of § 547 germane to this proceeding is § 547(b) and is as follows:

> Except as provided in subsection (c) of this section, the trustee may void any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or an account of an antecedent debt owed by the debtor before such transfer was made:
>
> (3) made while the debtor was insolvent,
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

After the elements of § 547(b) have been proven, the trustee can invoke § 550 to

recover the unlawful preferential transfer.[10] As the impact of § 550 turns on the outcome of the § 547(b) issue and is undisputed in its efficacy, the Court will consider the application of § 550 to be axiomatic subject to whether the Court determines that the elements of § 547(b) have been met.

The defendants contend that there are two elements of § 547(b) which the trustee is unable to prove, and therefore, indicate that summary judgment should be granted in their favor. First, because the interpleader funds were transferred more than 90 days before the filing of the debtor's bankruptcy petition, there is a failure to meet the requirements of § 547(a)(4)(A).[11] The defendants position is that the alleged transfer occurred when Norshipco deposited the final installment of interpleader funds with the Norfolk Circuit Court on May 15,1995. As the transfer date was approximately seven months prior to the bankruptcy filing, the 90 day requirement of § 547(b)(4)(A) is not capable of being established. The trustee, on the other hand, argues that the transfer occurred the day that the final decree was signed and entered by the Norfolk Circuit Court. As the decree was signed and entered on December 7,1995, the trustee's position is that the 90 day requirement pursuant to § 547(b)(4)(A) is met as a result of the December 14 filing date. Therefore, the Court must determine if the transfer occurred on the date of the final deposit by Norshipco on May 15 or on the date of the final decree on December 7, 1995.

The defendants second basis for denying that the elements of § 547 are not provable is that the payment of the interpleader funds was not a transfer of property which was "of an interest of the debtor." The defendants argue that the December 7, 1995 final decree awarded the interpleader funds to the right-

ful parties, which included the defendants. More significantly, the decree also declared that "[a]ny claims filed by defendant Professional Coatings (North America), Inc. [the debtor], are hereby dismissed with prejudice." This aspect of the decree, argues the defendants, is dispositive that the debtor had no legal or equitable interest in the funds or property. Therefore, there is no avoidable preference under § 547(b) because there was not "any transfer of an interest of the debtor in property" as required by § 547(b).

Accordingly, the merits of the defendants' two arguments and the ability of the trustee to prove the elements of § 547(b) turn on the binding effect that the December 7, 1995 final decree has on this Court. Therefore, the Court must filter the final decree through the doctrines of res judicata and collateral estoppel to adjudicate the defendants' summary judgment motion.

### III. Governing Preclusion Law

■ "To evaluate the preclusive effect of a state court judgment, a federal court must apply the preclusion law of the state in which the judgment was rendered." *Migra v. Warren City School District Bd. Of Educ.*, 465 U.S. 75, 81–85, 104 S.Ct. 892, 896–98, 79 L.Ed.2d 56 (1984); *See U.S. v. Turner*, 933 F.2d 240, 243 n. 2 (4th Cir.1991); *In re Wizard Software*, 185 B.R. 512, 515 (Bankr.E.D.Va.1995)(citing 28 U.S.C. § 1738). Therefore, as the interpleader action and alleged transfer occurred completely in Virginia, the Court is required to look to Virginia's interpretation and application of the doctrines of res judicata and collateral estoppel.

### IV. Res Judicata
#### *Introduction*

■ "Res judicata is the general doctrine that includes both claim and issue pre-

---

10. The relevant portion of § 550 is as follows:
 Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from—
 (1) the initial transferee of such transfer of the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transfer.
 11 U.S.C. § 550(a).

11. It is undisputed that any of the defendants could be characterized as an "insider" pursuant to 11 U.S.C. § 101(31). Therefore, the (B) prong of § 547(b)(4) has no bearing to the finding of a preference action in this matter.

clusion." *In re Williams Contract Furniture.* 148 B.R. 799, 801 (Bankr.E.D.Va. 1992). While res judicata is often referred to as "claim preclusion," collateral estoppel is synonymous with the more specific doctrine of "issue preclusion." *Id.* Res judicata acts as a complete bar to the second action and precludes the litigation of all grounds for defenses and recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior action. *In re Wizard Software,* 185 B.R. at 517: *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). "The bar of res judicata precludes relitigation of the same cause of action, or any part thereof, which could have been litigated between the same parties and their privies." *In re Wizard Software,* 185 B.R. at 516 (citing *Smith v. Ware,* 244 Va. 374, 421 S.E.2d 444 (1992)). In other words, res judicata avoids the necessity for "relitigation in a second suit involving the same parties based on the same cause of action if the court in the first suit issued a judgment on the merits." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). On the other hand, collateral estoppel, or issue preclusion, is best described as "a scalpel, not a sword" and is meant to preclude the relitigation of specific issues. *Brown v. Felsen,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10; *In re Howard,* case No. 96–25025 (Bankr. E.D.Va.1997)(Adams, J.).

▮ The policy supporting res judicata, or claim preclusion, is twofold. First, and more importantly, res judicata is based upon the recognized public policy that there must be an eventual end to litigation. *In re Wizard Software,* 185 B.R. at 516 n. 9. Second, it promotes judicial economy by forcing the parties to rely on judicial decisions which, in turn, allows the court to resolve other disputes. *Felsen,* 442 U.S. at 131, 99 S.Ct. at 2209.

▮ While the Supreme Court has held that res judicata does not apply to a pre-bankruptcy dischargeability of debt proceeding,[12] res judicata unequivocally "applies to bankruptcy matters that are outside the scope of dischargeability." *In re Wizard Software,* 185 B.R. at 517, citing *Felsen,* 442 U.S. at 138–39, 99 S.Ct. at 2212–13. As the core issue in this matter involves a preference action under § 547(b) and is not a dischargeability action, the Court "has the green light" to consider the effects of the doctrine of res judicata as a lynchpin for summary judgment.

▮ The Supreme Court of Virginia has identified four elements that must be proved for res judicata to be successfully asserted to bar a subsequent proceeding: (1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made. *Balbir Brar Associates v. Consolidated Trading & Services Corp.,* 252 Va. 341, 477 S.E.2d 743, 746 (1996)(citing *Smith v. Ware,* 244 Va. 374, 421 S.E.2d 444, 445 (1992)). The moving party attempting to invoke res judicata has the burden of proving by a preponderance of the evidence that the elements of res judicata have been established. *Reid v. Ayscue,* 246 Va. 454, 436 S.E.2d 439, 440 (1993).

### Identity of the Remedies Sought

▮ One of the elements that must be present for res judicata to be successfully asserted is that there is an "identity of the remedies sought." *Smith v. Ware,* 244 Va.

**12.** The application of res judicata to dischargeability issues is not clear. On one hand, the Fourth Circuit in *Combs v. Richardson,* relying upon *Brown v. Felsen,* held that "prior state court judgments not be given res judicata effect to preclude litigation of dischargeability issues which could have been, but were not, litigated in the earlier proceeding." *In re Crawford,* 183 B.R. 103, 107 n. 2, citing, *Combs v. Richardson,* 838 F.2d 112(4th Cir.1988). However, the analysis apparently turns on whether the state litigation occurred pre or post bankruptcy:

although there has been some confusion on [the res judicata] issue, it is now clear that bankruptcy courts and state courts have concurrent jurisdiction to determine whether a debt is excepted from discharge under § 523(a)(5). In this context, res judicata "issues only arise from post-bankruptcy actions to enforce a prepetition debt."
*Id.*

374, 421 S.E.2d 444, 445 (1992). An analysis of this element requires the Court to look to the remedy sought in each cause of action and by examining the "nature of the remedy" in context of the "design of the action." *Id.* In *Ware,* the first action was a judgment for unlawful detainer filed by Smith; the trial court ruled that it was barred by the statute of limitations and the action was dismissed. *Id.* After the dismissal of the unlawful detainer action, Smith filed a second action: it was bill of complaint seeking commutation of her dower interest in the residence and for damages for withholding her dower interest. *Id.* Ware, however, asserted that res judicata barred any recovery by the second suit. *Id.* The Supreme Court of Virginia, in reversing the trial court, held that there was not an identity of remedies in the two actions and consequently res judicata does not apply. *Id.* The court's reasoning was that the remedy in the underlying action, the unlawful detainer, sought the remedy of possession and damages. *Id.* However, in the second action, the moving party "seeks a commutation of her dower interest, which is a different remedy." *Id.* at 445–46. As these two actions sought a different remedy, res judicata was held to be not applicable and the second suit for the claim of dower was not barred. *Id.* at 447.

In a state interpleader action, the moving party seeks to have the court determine the proper owner of the property as well as adjudicate that the moving party is free from future liability with respect to the funds. *Bell Storage Co. v. Harrison,* 164 Va. 278, 180 S.E. 320, 323 (1935). Here, Norshipco deposited the funds with Norfolk Circuit Court because, as it stated in its state pleadings, it was "unable to determine the respective rights among the parties, hereto, and is unwilling to expose itself to the legal liability of choosing the wrong party." Therefore, the remedy sought in the state interpleader action was a conclusion as to who completed the ship repair contracts and, consequently, who was lawfully entitled to payment of the funds.

On the other hand, the remedy sought by the trustee in the § 547(b) preference complaint before this Court is "that the transfers to defendants [pursuant to the final decree] be declared null and void and that plaintiff be awarded judgments against defendants." This remedy is not identical to the state remedy because the state remedy sought a determination of rights while the current action seeks a return and turnover of those funds. *See* 11 U.S.C. § 550(a).

Applying the template in *Smith v. Ware* to determine if there is an identity of remedies, it appears that the remedies sufficiently differ between the state interpleader and federal bankruptcy court action to conclude that this res judicata element has not been met.

### *Identity of the Cause of Action*

The integral element in res judicata is that there be an identity between the two causes of action. *In re Williams Contract Furniture,* 148 B.R. at 801. An important purpose of res judicata is to "protect litigants from the burden of relitigating an identical issue with the same party or one in privity with that party." *In re McBee,* 146 B.R. 666 (Bankr.E.D.Va.1992)(citing *Hudgins v. Davidson,* 127 B.R. 6 (E.D.Va.1991)). Although the Court of Appeals for the Fourth Circuit has adopted a transactional test to determine whether two causes of action are the same, Virginia law looks to the underlying basis for the cause of action. *In re Grimm,* 168 B.R. 102, 111 (Bankr.E.D.Va. 1994); *see Ware,* 421 S.E.2d at 445–46. In Virginia, there are three standards that the Court can apply in which to determine whether there is an identity of the causes of action in the context of the doctrine of res judicata.

The first of these standards is to look at the law which supports the two causes of action as highlighted in *Smith v. Ware. See Ware,* 421 S.E.2d at 445–446: *In re Wizard Software,* 185 B.R. at 515. In addition to holding that there was no identity of remedies between the unlawful detainer and the dower suit, *supra,* the Supreme Court of Virginia also held in *Ware* that the causes of action were different. *Id.* at 446. In the unlawful detainer suit, Smith relied upon former Virginia Code § 64.1–33 which permitted a surviving spouse to reside in the marital residence until dower is assigned. *Id.*

However, in the second suit involving the dower interest, Smith relied upon former Virginia Code § 64.1–37 which entitled her to recover damages if her dower in real estate is withheld. *Id.* As Smith's two causes of action were based upon two mutually exclusive Virginia Code sections, the Supreme Court of Virginia concluded that there was no res judicata bar to the second cause of action. *Id.*

The second way to look to the underlying basis and, thus, determine if there is an identity of the causes of action for res judicata purposes, is to focus on the factual and legal issues that are raised in each of the proceedings. Two Virginia cases help to illustrate this assertion. In *Gottlieb v. Gottlieb*, 19 Va.App. 77, 448 S.E.2d 666 (1994), the wife filed a bill of complaint for divorce alleging constructive desertion by the husband. *Id.* 448 S.E.2d at 669. After the trial court determined that the husband did not constructively desert his wife and the husband's demurrer was sustained, the husband filed his own divorce suit and alleged willful desertion by the wife. *Id.* As a consequence of the prior ruling that the husband did not constructively desert his wife, the husband then argued that res judicata applied to prevent the wife from raising the defense that she was free from fault. *Id.* The Court of Appeals of Virginia concluded that res judicata was not applicable because both divorce suits "attempted to prosecute different causes of action." *Id.* The Court, focusing on the "issue" in each cause of action wrote that:

> the issue in [the wife's case] case was whether husband's conduct was sufficient to constitute a fault ground of divorce. In the subsequent divorce suit filed by the husband, the issue was whether wife's conduct constituted desertion ... The order sustaining husband's demurrer that the husband did not constructively desert his wife ... did not operate, under the doctrine of res judicata, as a complete bar to wife's defenses against husband's bill of complaint.

*Id.* at 669–670.

A second case which interprets this issue of res judicata by focusing on the comparison of the factual and legal issues in the two causes of action is *Balbir Brar v. Consolidated Trading & Services Corp.*, 252 Va. 341, 477 S.E.2d 743, 746 (1996). In *Balbir Brar*, Brar and Consolidated entered into a joint venture to build and develop a luxury townhouse community. *Id.* 477 S.E.2d at 744. Consolidated later sued Brar in federal district court for alleged violations of the Lanham Act, which provides civil remedies for false representations made as to the origins of commercial goods. *Id.* Brar did not file any counterclaims in this action and was eventually granted summary judgment on the federal issue. *Id.* Subsequently, Brar filed a bill of complaint in state court against Consolidated for various cause of actions including the unlawful termination of the joint venture agreement; Brar sought specific performance of the agreement, the appointment of a receiver, and an accounting. *Id.* At the trial court level, Consolidated argued that the Brar bill of complaint is barred because Brar should have included such claims in a compulsory counterclaim as required by the Federal Rules of Civil Procedure. *Id.* at 744–45. To determine if the state complaint was required to be filed as part of a compulsory counterclaim to the federal action, the Supreme Court of Virginia applied a four-part test as utilized by the Court of Appeals for the Fourth Circuit. *Id.* at 745. One of the elements of the four-part test required the court to make an inquiry as to whether res judicata would bar the subsequent suit notwithstanding the compulsory counterclaim rule. *Id.* In concluding that res judicata would not have barred the litigation of the state bill of complaint, the Supreme Court of Virginia stated that there was no identity of remedies nor causes of action between the federal claim and the state complaint. *Id.* at 746. Integral to the court's conclusion was its thorough analysis and comparison of the issues of fact and law between the two claims which led the court to reason that "the issues of fact and law raised in Brar Associate's bill of complaint are not 'largely the same' issues as those raised in Consolidated's Lanham Act claim." *Id.* Therefore, "largely the same issues" is a standard for determining whether two causes of action are the same.

The third method that the Court can use to determine if the causes of action in the two proceedings are identical is to ask "whether the same evidence will support both actions." *Allegheny Airlines, Inc. v. Merillat,* 14 Va.App. 341, 416 S.E.2d 467, 469 (1992). In *Allegheny Airlines,* a worker received disability benefits for one period of time and subsequently filed a second disability claim for a separate period of time. *Id.* 416 S.E.2d at 468–69. The Court of Appeals of Virginia held that the second claim was not barred by res judicata because the identity of causes of action element was not satisfied. Id. at 469. While the appellate court stated that the "true test" of whether the identity of causes of action element has been established is whether there is an "identity of the underlying issues," the court provided a mechanism for such a determination by stating that "[a]n appropriate test for determining the identity of issues involved in former and subsequent actions is 'whether the same evidence will support both actions.'" *Id.* (citing *Pickeral v. Federal Land Bank,* 177 Va. 743, 15 S.E.2d 82, 85 (1941)). Applying the test, the court ruled that the medical evidence necessary to prove the second claim is different than the evidence relied upon in the first claim. Id.

The Court, therefore, is left with three tests in which to determine if there is an identity in the causes of action. First, are the two causes of action based upon mutually exclusive code sections or statutory language? *See Ware,* 421 S.E.2d at 446. Second, do both causes of action contain substantially the same legal and factual issues? *See Gottlieb,* 448 S.E.2d at 669; *see Balbir Brar,* 477 S.E.2d at 745–46. Finally, does the same evidence support both causes of action? *See Allegheny Airlines,* 416 S.E.2d at 469.

■ Here, the first cause of action is the state interpleader action filed by Norshipco which was based upon the state court's intrinsic powers to deliver an equitable remedy to determine the proper owner of the funds. *See Bell Storage,* 180 S.E. at 323. However, the second cause of action, the bankruptcy preference action, is based upon the Federal Bankruptcy Code. The two causes of action are rooted in not only different statutory language, but also different bodies of law. Therefore, based upon the test in *Smith v. Ware,* the causes of action are not identical. *See Ware,* 421 S.E.2d at 446.

Turning to the *Gottlieb and Balbir Brar* interpretation which requires that the causes of action contain the same factual and legal issues, the Court refers to the pleadings. The first action was an interpleader action filed by Norshipco, a third party, requesting that the Norfolk Circuit Court determine the proper recipient of the funds. Ostensibly, the issues before that court centered around who did the repair work and for how much. The legal and factual issues in this preferential transfer action, however, gravitate toward the determination of whether the elements of a § 547(b) avoidable preference have been satisfied. Therefore, as the issues in the two proceedings are not "largely the same," the causes of action are not identical.

The third method requires that the evidence supporting both causes of action be the same. *See Allegheny Airlines,* 416 S.E.2d at 469. Based upon the pleadings filed in the state interpleader action which were made part of this Court's record, the evidence required in the interpleader action was that repair work was completed on the listed ships and that Norshipco had no right to the funds. However, in determining the merits of the § 547 avoidable preference cause of action, the Court is not concerned with evidence regarding the fact that repair work was completed and that Norshipco makes no claim to the funds. Rather, there must be a showing of evidence that the elements of § 547(b) have been met. Although there may be some overlap, the same evidence will not necessarily support both actions. *See id.* Therefore, there is not an identity in the causes of action under the *Allegheny Airlines* test.

In summary, the Court holds that the causes of action in the state interpleader action and this proceeding are based upon mutually exclusive statutory language, contain different issues of fact of law, and require different evidence to prove the two actions. Thus, the Court concludes that there is no identity in the two causes of

action, and this element of res judicata has not been met.

### Identity and Quality of the Parties

Having determined that the prior two elements of res judicata under Virginia law have not been met, the Court deems it unnecessary to analyze the last two requirements of res judicata.

### Res Judicata-Conclusion

In finding that the elements of res judicata have not been met and that the final decree does not bar relitigation of issues essential to the current § 547(b) preference action, the Court is mindful of a passage from the Supreme Court:

> Because res judicata may govern grounds and defenses not previously litigated ... it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked only after careful inquiry.

*Felsen*, 442 U.S. at 132, 99 S.Ct. at 2210.

■■■ Also influential to the Court's conclusion that res judicata does not bar the § 547(b) avoidable preference action is the timing of the final decree as juxtaposed with the bankruptcy filing. Although a dischargeability case, *In re Crawford* distinguished between pre-bankruptcy actions and post-bankruptcy actions. *In re Crawford*, 183 B.R. 103, 106–07 (Bankr.W.D.Va.1995). Where there is a pre-bankruptcy action, res judicata should not apply because "the debtor ... [does not have] all of the procedural tools and opportunity to litigate" the underlying issue. *Id.* at 107, fn. 2. However, the bankruptcy court, relying upon *In re Rosenbaum*, 150 B.R. 994, 996 (E.D.Tenn.1993), concluded that "bankruptcy courts and state courts have concurrent jurisdiction to determine whether a debt is exempted from dis-

charge." *Id.* at 107. Therefore, res judicata is applicable in a dischargeability of debt context only if it was a "post-bankruptcy action." *Id., see supra* note 12 and accompanying text. Here, the interpleader action was filed in late 1994, and most of the pleadings were filed prior to December 1995. As the final decree was entered December 7 and the debtor's bankruptcy petition was filed December 14, 1995, the interpleader had been litigated *pre*-bankruptcy. Therefore, the trustee did not have "all of the procedural tools and opportunity to litigate" the elements necessary to a preference action. *See In re Crawford*, 183 B.R. at 107 n. 2. Thus, from a pure public policy perspective, the Court is reticent to find that res judicata is applicable in this case.

In conclusion, the Court holds that the defendants have not met their burden of proving that the elements of res judicata have been satisfied.[13] Therefore, as res judicata is not applicable for purposes of adjudicating the § 547(b) preference action, the Norfolk Circuit Court's findings are not binding on this Court, and the Court is not barred from relitigating the issues relevant to the trustee's § 547(b) avoidable preference cause of action.

## V. Collateral Estoppel

### Introduction

■■■ Collateral Estoppel, also referred to as "issue preclusion," is a subset of the general doctrine of res judicata and applies where the second action between the same parties is based upon a different cause of action. *In re Lucas*, 186 B.R. 67, 69 (Bankr. E.D.Va.1995); *Glasco v. Ballard*, 249 Va. 61, 452 S.E.2d 854, 855 (1995) ("the doctrine [of collateral estoppel] applies even where the subsequent proceeding involves a different claim for relief."). The important distinction between res judicata and collateral estoppel is that "res judicata forecloses all issues that

**13.** The defendants contend that by concluding that res judicata does not apply here, the Court will reach an "absurd result" because "res judicata will virtually never apply in preference actions." While the Court agrees with the defendants that "res judicata will virtually never apply in preference actions," the Court disagrees with the defendants' claim that it is an absurd result.

The principal reason that res judicata will never apply in the given fact pattern is that the state action is not the same cause of action as a § 547(b) avoidable preference action. However, while res judicata may not provide the preclusive effect that the defendants are searching for, collateral estoppel may be applicable for it has different qualities and criteria.

could have been litigated previously" while "collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." ' *In re Lucas,* 186 B.R. at 69, citing *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). If proven, collateral estoppel will preclude the relitigation of a specific fact or issue that was decided in a prior final judgment which involved a different cause of action. *Reid v. Ayscue,* 246 Va. 454, 436 S.E.2d 439, 440 (1993).

 The prevailing state case law with respect to collateral estoppel is represented by *TransDulles Center, Inc. v. Sharma,* 252 Va. 20, 472 S.E.2d 274 (1996). In stating that the "Virginia law on collateral estoppel is clear," the Virginia Supreme Court identified five elements necessary for collateral estoppel to apply. *Id.* 472 S.E.2d at 275. First, the issue litigated must have been essential to the prior judgment. Id. Second, the prior action must have resulted in a valid and final judgment against the party sought to be precluded in the present action. *Id.* Third, the parties or privies in both the proceedings must be the same. *Id.* Fourth, there must be mutuality between the parties. *Id.* Finally, the factual issue litigated actually must have been litigated in the prior action. *Id.* As with res judicata, the defendants have the burden of proving by a preponderance of the evidence that the elements of collateral estoppel have been established. *Reid,* 436 S.E.2d at 440.

### Factual Issue Essential To Prior Judgment

 The precise factual issue, which is the target of the collateral estoppel preclusion, must have been essential to the prior judgment. *Glasco,* 452 S.E.2d at 854; *Petrus v. Robbins,* 196 Va. 322, 83 S.E.2d 408, 412 (1954). Here, the defendants are attempting to preclude from relitigation the two following findings: who has the lawful right to receive the distributed interpleader funds and that the debtor has no right to the funds or any future claims with respect to the funds. Although the Court is not certain as to what actually transpired or what was influential to the Norfolk Circuit Court decision, the final decree declared that the vari-

ous claimants were entitled to the funds and that the debtor had no further claims to said funds. Thus, the Court believes that essential to the decree were determinations made by Judge Morrison that the various parties were, in fact, the proper recipients of the funds and that PCNA had no further interest in the funds. Therefore, the Court finds that the issues which the defendants are attempting to have be precluded from relitigation were "essential to the prior judgment." Therefore, this element of collateral estoppel has been fulfilled.

### Valid and Final Judgment

The Virginia Supreme Court has stated that:

A plea of res judicata or estoppel of record may be successfully invoked upon a final judgment or decree of a court of inferior or limited jurisdiction, as well as upon the judgment or decree of a court of record of general jurisdiction, provided the inferior court had jurisdiction of the parties and of the subject matter.

*Petrus,* 83 S.E.2d at 412.

 Here, the decree entered by the Norfolk Circuit Court on December 7, 1995 was labeled a "final decree." Furthermore, the last sentence of the decree states that "[t]his chancery suit shall be placed among the ended causes." In light of the guidance provided by *Petrus* and the language in the final decree, the Court concludes that the decree entered by the court on December 7, 1995 is a valid and final judgment. Therefore, this element of collateral estoppel has been satisfied.

### Same Parties or Privies

For collateral estoppel to apply, the parties or their privies must be the same in the matter before this Court as were before the Norfolk Circuit Court. *See TransDulles Center,* 472 S.E.2d at 275. As the Court is obligated to apply Virginia law to determine if the requirements of collateral estoppel have been met, an analysis must be made of Virginia cases in order to answer the question of whether a federally created bankruptcy trustee which in a federal bankruptcy

action is in sufficient privity with a debtor that the debtor's prior state action binds the trustee. However, the Court could not locate any Virginia cases which directly addressed the issue of whether there is collateral estoppel privity between a debtor and a bankruptcy trustee. Consequently, the Court must predict how a state court would rule on the issue. Based on the Court's research, there are two lines of cases which help the Court predict how a Virginia court would rule on this issue.

The first line of cases examines the relationship between the two parties and has it's roots in the Supreme Court of Virginia case *Nero v. Ferris*, 222 Va. 807, 284 S.E.2d 828 (1981). In *Nero*, a California resident, Nero, filed a personal injury suit in California state court against two Virginia defendants, Noah Ferris and his son William Ferris. *Id.* 284 S.E.2d at 830-31. Neither Ferris made an appearance in the California proceeding, and default judgments were entered against them. *Id.* at 830. Subsequently, Nero filed suit in Virginia state court attempting to domesticate the personal injury judgments against both Ferrises, and the Virginia court found that neither Ferris was in California at the time of the alleged accident. *Id.* The court then ruled that the California court did not have personal jurisdiction over Noah, and agreed with Noah that the California judgment against him was null and void. *Id.* Consequently, it denied Nero's request that the judgment against Noah Ferris be domesticated. *Id.* at 831. Subsequently, William argued that the findings' in Noah's suit acted as a collateral estoppel bar to the domestication of Nero's default judgment against William; the trial court agreed with William and also refused to domesticate the suit. *Id.* Affirming the trial court's finding of collateral estoppel, the Supreme Court of Virginia concluded that William was in privity with Noah. *Id.* In doing so, the court stated:

> There is no fixed definition of privity that automatically can be applied to all cases involving res judicata issues. While privity generally involves a party so identical in interest with another that he represents the same legal right, a determination of just who are privies requires a careful

examination into the circumstances of each case.

*Id.* (*citing Storm v. Nationwide Mut. Ins.,* 199 Va. 130, 97 S.E.2d 759, 762 (1957)). The court added that "the focus is on the relationship" between the two defendants. *Id.* Because the relationship between Noah and William was principal-agent in nature, there was sufficient privity to conclude that collateral estoppel existed. *Id.* at 831-32.

Another case which looks to the relationship of the parties to determine privity is *Kesler v. Fentress*, 223 Va. 14, 286 S.E.2d 156 (1982). In *Kesler*, Kesler filed a trespass action against Mr. and Mrs. Fentress as joint owners of a parcel of land. *Id.* 286 S.E.2d at 156-57. Mrs. Fentress was dismissed as a defendant because no evidence had been presented that indicated that she had ever physically been on the disputed parcel. *Id.* at 157. Having been instructed to find for Mr. Kesler only if they believed that Kesler had proper title to the land and the right to its possession, the jury awarded judgment to Kesler. *Id.* Later, Mrs. Fentress filed a motion for judgment against Kesler seeking an "ascertainment and designation of the true boundaries." *Id.* Kesler argued that her motion for judgment was barred by the doctrine of collateral estoppel because the title issue had been previously litigated and decided by the jury; however, the trial court disagreed and eventually found that title belonged to Fentress. *Id.* Having heard Kesler's appeal, the Supreme Court of Virginia reversed the trial court and held that collateral estoppel barred the suit by Mrs. Fentress. *Id.* at 159. Stating that the issue was "whether Mr. and Mrs. Fentress stood in privity with one another in the trespass action so that he represented her," the court concluded that the privity element of collateral estoppel had been satisfied because there was "joint ownership" of the land by Mr. and Mrs. Fentress. *Id.*

Although not finding that privity existed, the United States Bankruptcy Court for the Eastern District of Virginia applied the holding in *Nero v. Ferris* by also looking to the relationship between the parties. In *In re Barrow*, 87 B.R. 879 (Bankr.E.D.Va.1988), a creditor filed a complaint to revoke the debt-

or's discharge. *Id.* at 881. That creditor settled with the debtor, and a new creditor filed a similar complaint. *Id.* Needing assistance to finance the cost of the dischargeability litigation, the new creditor received financial, informational, and legal succor from the old creditor. *Id.* The new creditor eventually also settled with the debtor; however, the settlement agreement stated that the consent order would not be signed for 60 days so that other parties in interest could intervene or be substituted. *Id.* Upon learning of the settlement between the new creditor and the debtor, the old creditor requested that he be reimbursed by the new creditor for his assistance. *Id.* Consequently, a settlement was reached by the two creditors whereby the old creditor would intervene as a creditor contesting the discharge within the 60 day period. *Id.* The old creditor intervened in the adversary proceeding prior to the expiration of the 60 day window. *Id.* at 882. The debtor then argued that the old creditor's claim is barred by collateral estoppel because the two creditors were in privity by virtue of their relationship. *Id.* at 889. The court relied upon the holding in *Nero v. Ferris* to hold that there was no privity, and, thus, no collateral estoppel. *Id.* at 890. The court reasoned that there was not a sufficiently strong relationship between the parties for there to be privity. *Id.* ("A mutual or successive relationship to the same rights of property is not at issue . . ."). The court added that "[w]ith respect to the case law interpreting Virginia's general rule, the legal relationship between [old creditor] and [new creditor] does not fit within the narrow concept of privity recognized by the Virginia courts. We have not found evidence of a principal-agent relationship, as in *Nero* . . ." *Id.*

Within this line of cases and with origins in *Nero v. Ferris are Race Fork Coal Company v. Turner*, 237 Va. 639, 379 S.E.2d 341 (1989) and *Angstadt v. Atlantic Mutual Insurance Co.,* 249 Va. 444, 457 S.E.2d 86 (1995). These cases are distinguishable from *Nero* and *Kesler* because the court focused more on the "identity of interests" between the parties to conclude that collateral estoppel privity did not exist to trigger collateral estoppel. In *Race Fork Coal,* an injured employee filed a worker's compensation suit initially against what he thought was his employer, an uninsured independent contractor, and then refiled it against his statutory employer, a fully insured general contractor. *Race Fork Coal,* 379 S.E.2d at 342. The court held that the independent contractor and statutory employer were not in privity for purposes of collateral estoppel. *Id.* at 344. Rather than focusing strictly on the relationship between the two parties, the court focused on whether the "interests were sufficiently identical" between the two parties. *Id.* at 342. Furthermore, the court, citing *Nero,* emphasized that "a determination of privies requires a careful examination of the circumstances of each case." *Id.* Applying these standards, the court concluded that "the interest of the actual employer and the statutory employer vis-a-vis the employee diverge" because of differing statutory rights and obligations. *Id.* at 343.

In *Angstadt,* an injured employee was awarded default judgment against his employer when another employee of the employer failed to attend a deposition. *Angstadt,* 457 S.E.2d at 87. Consequently, the employer's insurer moved to disclaim its coverage under a breach of contract theory because the employer failed to properly defend itself as a result of the employee's failure to appear at the deposition. *Id.* Contending that the default judgment established the employer's breach of duty, the insurer alleged collateral estoppel. *Id.* The court, however, held that the insurer was not in privity with the employer in the underlying action which resulted in the default judgment; therefore, there was no collateral estoppel. *Id.* As in *Race Fork Coal,* rather than focusing strictly on the relationship between the two parties, the court focused on whether the "interests were sufficiently identical" between the two parties. *Id; see Race Fork Coal,* 379 S.E.2d at 342. Applying this measure, the court concluded that "a careful examination of the circumstances of the case reveals that their interests ceased to be identical, and instead became adversarial." *Id.*

Having examined the first line of cases, the Court turns to the second line of cases. More influenced by public policy influences,

the second line of cases examines whether the interests of the non-party were effectively represented at the first proceeding and does so by inquiring into whether there were any potential Due Process clause violations. *Dicta* by the Supreme Court of Virginia in the *Race Fork Coal* holding highlights this due process concern:

> Because the rules of privity bind a non-party to an adjudication of which it had no notice, and thus implicate due process, their application does not turn upon the merits of a possible defense but upon the constitutional right to notice enabling one to make a defense.

*Race Fork Coal,* 379 S.E.2d at 343. Furthermore, the bankruptcy court in *In re Barrow* articulated that the principles of collateral estoppel privity are "based on the due process guaranty of a full and fair opportunity to litigate." *In re Barrow,* 87 B.R. at 889. The court further emphasized its due process concerns by stating that "a party's rights to his day in court must be protected zealously." *Id.* at 891. (Citations omitted).

Two federal cases, *In re Fill,* 82 B.R. 200 (Bankr.S.D.N.Y.1987), and *Pereira v. Aetna Casualty & Surety Co.,* 921 F.Supp. 1121, 1124 (S.D.N.Y.1996), breathe more life into the due process issue. In *In re Fill,* the bankruptcy refused to give preclusive effect to a state default judgment. *Id.* at 216. The bankruptcy court concluded that there was not sufficient privity between the trustee and debtor and reasoned that:

> While it is true that a bankruptcy trustee is a successor to the debtor's property and for many purposes is deemed to be in privity with the debtor, that privity is not so complete as to bind the trustee to an adverse *in personam* judgment rendered against the debtor before the bankruptcy case was begun. For it is plain that the rights of creditors are not considered in the pre-bankruptcy suit.

*Id.* at 217. In *Pereira,* the federal district judge in the same circuit stated that "[a]s the trustee in bankruptcy is distinct from the pre-petition debtor, the trustee should not be foreclosed from asserting his position." *Pereira,* 921 F.Supp. at 1124. The significance of *In re Fill* and *Pereira* is best highlighted when it is juxtaposed with *In re Armstrong,* 201 B.R. 526 (Bankr.D.Neb.1996), a similar bankruptcy case but with a different outcome. In *In re Armstrong,* a creditor moved to object to the debtor's discharge. *Id.* at 528. The debtor requested that the trustee join in the matter; however, the trustee refused to do so. *Id.* at 528–29. In holding that the privity element of collateral estoppel was satisfied, the bankruptcy court asked whether "the Trustee and the debtors are so nearly identical that it is fair to treat them as the same parties." *Id.* at 531. Furthermore, the bankruptcy court stated that "[t]he facts of this case, the identical interests of the parties in [the prior action], and the Trustee's awareness of the litigation and refusal to join in, lead me to conclude that it is fair to treat the Trustee and the debtors 'as the same parties for purposes of determining the preclusive effect of the [prior] judgment.'" *Id.* at 532. The key to the distinction between *In re Armstrong* and *In re Fill* is the timing of the first action in relation to the bankruptcy filing. In *In re Armstrong,* the first judgment was from a post-petition objection to claim proceeding. However, in *In re Fill,* the underlying initial action was a pre-petition state court judgment. *In re Fill,* 82 B.R. at 212–214.

The Court believes that these due process implications are valid concerns. The preclusive effect of a prior judgment that was adjudicated in a pre-petition action creates potential Due Process Clause abrogations. In other words, it is arguably unfair to the trustee or creditors to have a prior action, in which the trustee had no notice of nor any opportunity to join, prejudicially affect his rights and the rights of the estate:

> We are of the view that the Trustee is not bound, either on res judicata or judicial collateral estoppel, by the prior state court proceedings. The trustee is, of course, a successor of the Bankrupt for many purposes. But he is much more both in the extraordinary rights with which the Bankruptcy Act invests him, and as a general representative of the creditors. Unless he intervenes and takes on the role of an active litigant subjecting himself thereby to the usual incidents of such action, he is

not bound by the judgment merely because the Bankrupt was a party defendant in the prior litigation. Only in a limited situation will the Trustee be foreclosed.

*Coleman v. Alcock,* 272 F.2d 618, 621–22 (5th Cir.1959)(court held that the trustee was not bound by a state court judgment declaring that certain transfers were not a fraud). The relevance of these cases is that, in this matter, the state interpleader action was adjudicated prior to PCNA's bankruptcy filing on December 7, 1995.

In summary, the Court must make a difficult choice as to which line of cases to follow in order to prognosticate how the Virginia courts would decide the issue. We can apply the first line of cases in which collateral estoppel privity was found because there were sufficient relationships and "identification of interests" between the parties in the first action and the party in the second action to justify privity. Alternatively, the Court can apply the second line of cases and focus on whether the trustee was deprived of due process and, consequently, was not effectively represented at the first proceeding. While the holdings in the two lines of cases are not necessarily mutually exclusive, they differ in that it is more problematic to find privity when applying the second line of cases where constitutional concerns were found to be paramount. Therefore, although the Court believes that the second line of cases provides insight with the final analysis, the Court is persuaded to embrace the holdings in the first line of cases for the following reasons.

As previously identified, the Court is obligated to look to state law to determine whether collateral estoppel privity exists. *Migra,* 465 U.S. at 81–85, 104 S.Ct. at 896–98: *Turner,* 933 F.2d at 243 n. 2; *In re Wizard Software,* 185 B.R. at 515. An examination of state case law leads the Court to conclude that the primary focus of the Supreme Court of Virginia is on the relationship between the parties and their similarity of interests, and, therefore, the first line of

cases is controlling. *See Nero,* 284 S.E.2d at 831. The most recent Supreme Court of Virginia case dealing with the privity element of collateral estoppel is *Angstadt,* where the court, though concluding that privity did not exist, clearly relied on the relationship and identity of interest test. *See Angstadt,* 457 S.E.2d at 87–88. Although overtures were made in *Race Fork Coal* and *In re Barrow* that the court must be concerned with due process implications when concluding that privity exists, a contemporary reading of Supreme Court of Virginia opinions leads the Court to believe that a Virginia court's inquiry would examine the relationship between the parties and their identity in interests rather than emphasizing due process implications.

In concluding that the relationship test has more bearing on the privity determination than the focus on due process implications as promulgated by the federal bankruptcy courts, the Court is mindful of *Federal Financial Co. v. Hall,* 108 F.3d 46 (4th Cir. 1997). In *Federal Financial,* the Fourth Circuit Court of Appeals, in applying the teachings of the Supreme Court in *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 87, 114 S.Ct. 2048, 2054–55, 129 L.Ed.2d 67 (1994), admonished that federal courts "should create federal common law rules only where there is a significant conflict between some federal policy or interest and the use of state law." *Id.* at 49. While it is not necessarily an easy question to decide, this Court believes that there is not a significant conflict between the federal bankruptcy court's policy focus in *In re Fill* and *In re Barrow* on due process and the opportunity to litigate and the Supreme Court of Virginia's focus on the relationship between the parties and identity of interests. Therefore, the Court must refrain from relying upon federal bankruptcy courts for guidance on this issue or from creating its own privity test.[14] Rather, the Court should be consistent with the holdings and paradigms of the Supreme Court of Virginia when determining if there is privity between a trustee and debtor for state collat-

---

14. The Court acknowledges that the bankruptcy court in *In re Barrow* was relying upon Virginia law in answering the privity question. *In re Barrow,* 87 B.R. at 889. However, the court also weighed heavily into the equation the holdings from various Fourth Circuit cases, which emphasized the role of due process guarantees, before concluding that privity exists. *See id.*

eral estoppel purposes. If the Court were to do otherwise and articulate its own standard or concerns, then it would be committing the transgression of creating federal common law.

Applying the relationship test in *Nero v. Ferris* to the specific "circumstances of this case," the Court concludes that there is privity between the trustee and PCNA. As the Court could not locate any Virginia cases in which the state court considered the existence of privity between a bankruptcy trustee and a debtor, the Court must analogize this relationship to other privity relationships. Consequently, the Court concludes that the debtor-trustee relationship is closely analogous with the principal-agent relationship in *Nero v. Ferris* and the joint land ownership relationship in *Kesler v. Fentress. See Nero*, 284 S.E.2d at 831; *see Kesler*, 286 S.E.2d at 157. As the Virginia Supreme Court determined that those relationships supported a finding of privity because of the strength of the relationships and identity of interests, the Court believes that Virginia courts would also find that privity exists between the trustee and PCNA. *See id.*

This conclusion is bolstered by the conclusions reached by federal bankruptcy courts that the trustee and debtor have similar interests in state litigation and are, therefore, in privity. *In re Practical Investment Corp.*, 95 B.R. 935, 946 (Bankr.E.D.Va.1989)(in preference actions, it is generally understood that the trustee stands in the shoes of the debtor); *see also In re Jones*, 21 B.R. 469 (Bankr.D.S.C.1982)(court held that there was sufficient privity between the trustee and debtor to preclude the trustee from relitigating a lien priority adversary proceeding); see also *In re Fineberg v. Ali*, 202 B.R. 206, 207–08 (Bankr.E.D.Pa.1996)("it can easily be concluded that the Debtor and the Trustee herein are in a relationship of privity with each other, and that the Trustee is thus bound by the Debtor's actions").

Therefore, in light of the foregoing case law and facts in this case, the Court concludes that the parties or privies in the interpleader action are the same as the parties in the action currently before this Court. In other words, the trustee is in privity with PCNA. Therefore, the burden has been met of proving that this element of collateral estoppel has been established.

### *Mutuality*

▆▆▆▆ In Virginia, collateral estoppel requires mutuality.[15] *Norfolk & Western Ry. v. Bailey Lumber Co.*, 221 Va. 638, 272 S.E.2d 217 (1980); *Selected Risks Insurance Co. v. Dean*, 233 Va. 260, 355 S.E.2d 579, 581 (1987)("this Court made a considered, unanimous decision to resist the so-called 'modern trend' and not to abrogate the mutuality requirement."). Mutuality means that a party is generally prevented from invoking the preclusive force of a judgment unless that party would have been bound had the prior litigation of the issue reached the opposite result. *TransDulles Center*, 472 S.E.2d at 275 (citing *Norfolk & Western Ry.*, 272 S.E.2d at 218).

▆▆▆ The question of whether there is mutuality here is predetermined because the Court has already held that the trustee was in privity with the debtor in the state court proceeding. If there is privity, there is mutuality; if there is no privity, then there is no mutuality. *Angstadt*, 457 S.E.2d at 88 ("Clearly, because [the first party] was not a party to the prior litigation, it would not have been bound had an opposite result been reached."). Because the Court has determined, supra, that the trustee was in privity with the debtor, the Court reaches the logical conclusion that both parties are equally bound by the prior litigation. Therefore, the Court concludes that mutuality exists, and, consequently, this element of collateral estoppel has been established.

**15.** Mutuality is especially required when collateral estoppel is used "offensively." *Norfolk & Western Ry.*, 272 S.E.2d at 217. Offensive collateral estoppel is present when "the plaintiff, who was a stranger to the former litigation, seeks to preclude the defendant, a party to the prior action, from relitigating an issue defendant lost in the prior case." *Id.* Defensive collateral estoppel is present when "the defendant, a stranger to the prior proceeding, attempts to preclude the plaintiff, a party to the former proceeding, from relitigating an issue plaintiff lost in the earlier case." *Id.*

### Factual Issue Actually Litigated

"The factual issue sought to be litigated actually must have been litigated in the prior action." *TransDulles Center,* 472 S.E.2d at 275. The defendants argue, as evidenced by the final decree, that the determination of who has the legal rights to the funds was "actually litigated" before the Norfolk Circuit Court. The trustee, on the other hand, argues that the issue of whether the debtor had an interest in the interpleader funds was never "actually litigated."

A recent Supreme Court of Virginia opinion provides the Court with contemporary state law guidance on whether a factual issue is "actually litigated." [16] In *TransDulles v. Sharma,* which was decided on June 7, 1996, the Supreme Court of Virginia held that the "actually litigated" element of collateral estoppel was satisfied despite the fact that the defendant never appeared before the district court and that the failure to appear resulted in a default judgment being entered by the district court. *Id.* at 276. Although the defendant did not appear at the proceeding, the court wrote that the moving party "presented testimonial evidence and exhibits in the tenant's absence." *Id.* at 275.

 Based on the court's holding in *TransDulles,* the Court concludes that the defendant's failure to personally appear at a hearing to contest the matter does not disqualify the application of collateral estoppel. *Id.* at 276. ("We disagree with the . . . argument that before an issue may be 'actually litigated' in a court proceeding, the defendant must personally appear at the hearing and contest the matter."). However, the Court also concludes that in order to meet the "actually litigated" requirement of collateral

estoppel when the non-moving party fails to appear, there must have been some evidence or testimony presented to the trial court which was considered by the judge as the foundation for the judge's holding. *See id.*

Obviously, the best way to prove that Judge Morrison made a consideration of the evidence would be the submission of a transcript from the December 7, 1995 hearing. *See In re Lee,* 90 B.R. 202, 203 (Bankr. E.D.Va.1988): *see Pizlo v. Bethlehem Steel Corp.,* 884 F.2d 116, 119 (4th Cir.1989). However, for whatever reasons, no transcript was submitted as part of the pleadings.

Ostensibly in lieu of a transcript, affidavits were submitted which attempted to explain what occurred during the hearing in front of Judge Morrison on December 7, 1995. One affidavit was by Robert H. Bennett, who was counsel of record for PCC. Mr. Bennett's affidavit consists mostly of statements as to what Judge Morrison said and did prior to and during the December 7 hearing. Specifically, Mr. Bennett swore that:

"The court then asked counsel to proffer to the court what the evidence would be in order to obviate the necessity of a long hearing, as the court's docket was rather full that day. Both [attorneys for the defendant] made a proffer to the court as to what their evidence would be as did [another defendant's attorney] and I."

Another affidavit filed as part of the pleadings was by the counsel of record for Rental Tools, Inc. Lawrence H. Glanzer. Mr. Glanzer's affidavit contained statements similar to the Bennett affidavit.[17] The final affidavit was by Dorothy S. Ammons, who was an employee of the defendant Industrial Marine,

16. The Court is not without guidance from other courts in the Eastern District of Virginia. At least one judge in the district has held that the "actually litigated" requirement will not be met where there is an uncorroborated default judgment in the first proceeding. *L & R Associates v. Curtis,* 194 B.R. 407, 411 (E.D.Va.1996). In *L & R Associates,* Judge Jackson refused to hold that collateral estoppel existed because the moving party "presented no transcript of the proceeding before the [Virginia Beach] Circuit Court or anything else to suggest that the Circuit Court entered more than a standard default judgment." *Id.* While the Court is persuaded by Judge Jackson's ruling, the Court must nonetheless turn to

state law for an interpretation of the elements of collateral estoppel. *See Migra,* 465 U.S. at 81–85, 104 S.Ct. at 896–98.

17. Glanzer's affidavit also included the statement:

"[t]he court then asked counsel to proffer to the court what the evidence would be in order to obviate the necessity of a long hearing . . . Both [attorneys for the defendant] made a proffer to the court as to what their evidence would be as did [another defendant's attorney] and I."

Inc. The emphasis of the Ammons affidavit were statements pertaining to the fact that the attorneys for Industrial Marine were "prepared to offer the court" admissions made by PCNA due to its failure to respond to Request for Admissions and other evidence that Industrial Marine was entitled to recover its share of the interpleader funds. Ms. Ammons also stated that "our attorneys were prepared to offer evidence and legal arguments that the defendants herein were entitled to recover the interplead funds directly based on various legal doctrines including quasi-contract and equitable linens."

The defendants argue that the affidavits support their position that the judge made a consideration of evidence before entering the final decree. Specifically, counsel for the defendants stated in their Motion For Summary Judgment that the judge had "substantial evidence available to determine that the Defendants herein were entitled to recover directly from the interpleader funds." The trustee, on the other hand, takes the contrary position by pleading that the affidavits do "not contain any facts which assist the Court in determining what Judge Morrison considered."

 The Court, however, is precluded from considering these affidavits as evidence. With respect to the Bennett and Glanzer affidavits, the Fourth Circuit Court Of Appeals has stated that:

> [a]n affidavit filed in ... a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court. Federal Rule of Civil Procedure 56(e) specifically requires that affidavits submitted on summary judgment contain admissible evidence and be based on personal knowledge ... Thus summary judgment affidavits cannot be conclusory or based upon hearsay.

*Evans v. Technologies Applications & Service Co.*, 80 F.3d 954., 962 (4th Cir.1996) (citations omitted). The law is clear in the Fourth Circuit that affidavits replete with hearsay evidence are inadmissible unless one of the hearsay exceptions applies. *Brock v. Carroll*, 107 F.3d 241, 244 (4th Cir.1997)(citing *Maryland Highways Contractors Assn.*

*v. Maryland,* 933 F.2d 1246, 1251 (4th Cir. 1991)). Hearsay is defined by the Federal Rules of Evidence as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed R. Evid. 801(c). In attempting to explain what Judge Morrison said and did during the December 7 hearing, the affiants made a number of hearsay statements. The affidavits contain statements not made by the declarants and, thus, can not be subjected to cross-examination. Moreover, the affidavits are clearly offered to prove the truth of the matter asserted, which is that there was sufficient consideration of the evidence made by Judge Morrison prior to entering the final decree. Finally, there is nothing in the record to suggest that the hearsay statements come within any of the exemptions which would make them admissible for the summary judgment motion. Fed.R.Evid. 801(d)(1), 803(5)—(24). Therefore, the Bennett and Glanzer affidavits are deemed to be inadmissible because they contain hearsay, and the Court can not consider the submitted affidavits as evidence.

 The Court is also precluded from being able to consider the Ammons affidavit. Because it is replete with statements as to what "my attorney ... was prepared to offer ... the Court," the Court deems that the statements do not contain relevant evidence. Under Rule 402 of the Federal Rules of Evidence, "evidence which is not relevant is not admissible." Fed.R.Evid. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 588, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469 (1993). Although Rule 401 is liberally interpreted, evidence as to what the attorneys were prepared to do or present to the court has no immediate relevance. *See Daubert,* 509 U.S. at 588, 113 S.Ct. at 2794. The affidavit offers evidence as to what the attorneys were prepared to offer Judge Morrison; however, the issue before the Court concerns what the

court actually considered prior to making its decision. Evidence as to what the attorneys would have done has no bearing on the determination as to what the court considered prior to entering the final decree. As these statements by Ammons do not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," the Court concludes that the Ammons affidavit is inadmissible under Rule 401 and Rule 402 of the Federal Rules of Evidence. *See* Fed.R.Evid. 401.

In conclusion, the answer to the question of whether the matter was actually litigated is a close call. The Court agrees with the defendants that a court need not explain, in its order, the procedural history or reasoning supporting the court's decision; to do otherwise would be overly burdensome to the court and would not be judicially efficient. However, the Court believes that the holding in *TransDulles* requires that there be something in the record which would form the basis for a default judgment. *TransDulles,* 472 S.E.2d at 275–76. Notwithstanding the non-moving party's absence, something must be presented to the trial court for the matter to be considered "actually litigated." Therefore, the Court concludes that *TransDulles* stands for the proposition that, for a default judgment to trigger collateral estoppel, there must be testimony, exhibits, or some form of evidence presented to the court by the appearing party notwithstanding the one party's absence. *See id.* Furthermore, this testimony or evidence must be duly considered by the trial judge notwithstanding the party's absence. *See id.*

To further help the Court with this "close call," the Court is reminded that the party attempting to invoke collateral estoppel has the burden of proving that the issue was actually litigated. *In re Grimm,* 168 B.R. at 112. As earlier indicated, the Court is handcuffed in its ability to ascertain if the factual issue was "actually litigated" because there is not a transcript of the December 7, 1995 final decree hearing. As there is nothing on the record before the Court to suggest that there was any testimony, evidence, or exhibits presented to the Norfolk Circuit Court which

had formed the basis for the final decree, the Court holds that the defendants have not met their burden of proving that the issue of who is legally entitled to the interpleader funds was "actually litigated." Even if the Court had ruled otherwise that the three affidavits are, in fact, admissible for this summary judgment hearing, the Court concludes that the affidavits do not supply sufficient persuasive weight to enable the defendants to meet their burden. Therefore, this element of collateral estoppel has not been established.

### Collateral Estoppel—Conclusion

In summary, the Court holds that the defendants have met their burden of proving that the factual issue sought to be precluded from further litigation was essential to the final decree, that the final decree was part of a valid and final judgment by the court, that the parties or privies in the state interpleader action and this bankruptcy proceeding were the same, and that mutuality existed between the parties. However, the defendants have not met their burden of proof with respect to whether the factual issue sought to be precluded was "actually litigated" by the Norfolk Circuit Court. Therefore, the Court concludes that all of the required elements of collateral estoppel have not been met. The issues as to which party has an interest in the interpleader funds, whether the debtor has any interest in the funds, and whether the debtor has any future claims have not been adjudicated for purposes of determining the merits of the trustee's § 547(b) complaint in the context of the defendants' Motion for Summary Judgment.

### VI. Section 547(b) Redux: Transfer Occur Within 90 Days Pursuant to § 547(b)(4)(A)

Having concluded that res judicata and collateral estoppel do not preclude the litigation of the issue as to whether the debtor had an interest in the funds transferred in the state court proceeding, the Court turns to a discussion of the merits of the trustee's claims that there was an avoidable preference under § 547(b). Sub-section (4)(A) of § 547(b) states that an element that must be proved to render a transfer avoidable is that the transfer must be made "on or within 90

days before the date of the filing of the petition." 11 U.S.C. § 547(b). As the date of PCNA's involuntary bankruptcy filing was December 14, 1995, the date which is 90 days before the bankruptcy filing is September 15, 1995. Therefore, if the Court determines that the undisputed facts presented before the Court lead to the legal conclusion that the alleged preferential transfer of interpleader funds occurred before September 15, then the trustee will not be able to prove that an avoidable preference action occurred.

To recapitulate the positions of the parties, the defendants argue that the transfer occurred when the final interpleader deposit was made with the Norfolk Circuit Court's registry on May 15, 1995. The trustee, on the other hand, argues that the transfer occurred on the date of the final decree on December 7, 1995. As there is no dispute among the parties as to the fact of the occurrence of the deposit of the monies by Norshipco and the subsequent disbursement of these funds pursuant to the provisions of the final decree, it remains for the Court to draw its legal conclusions based on these undisputed facts.

The only case that addresses this issue is the well cited case of *In re Gibraltar Resources, Inc.*, 197 B.R. 246 (Bankr.N.D.Tex. 1996), *aff'd. In re Gibraltar Resources, Inc.*, 202 B.R. 586 (N.D.Tex.1996). In *In re Gibraltar*, the debtor had an insurance policy to cover losses on oil and gas drilling wells. *Id* at 249. Prior to paying the insurance claim, the insurance company received correspondence from various parties indicating that they had been assigned the debtor's insurance proceeds and, thus, should be paid directly. *Id.* Consequently, the insurance company filed an interpleader action in the United States District Court to determine the legal owner of the funds. *Id.* An order was eventually entered adjudicating the dis-

tribution of the funds, and the debtor filed for bankruptcy soon thereafter.[18] *Id.* at 250.

Subsequent to the bankruptcy filing, the chapter 7 trustee filed a complaint that the interpleader action constituted an avoidable preference transaction under § 547(b) and, therefore, the interpleader funds should be returned to the trustee for distribution by the estate. *Id.* The trustee's position was "that for purposes of a preference action, the transfers occurred on July 21, 1993, which is when the District Court Clerk issued the checks." *Id.* Thus, the trustee argues that the transfer occurred within the 90 day requirement of § 547(b)(4). *Id.* The recipients of the interpleader distribution, on the other hand, argued that the debtor "no longer had any rights to the interplead funds at the time of the disbursement." *Id.* at 250. As "all of the Debtor's rights in the funds were terminated when the Agreed Final Judgment was entered," there was no provable avoidable preference action because the 90 day requirement of § 547(b)(4) can not be met. *Id.*

The bankruptcy court disagreed with the trustee's position that the transfer did not occur until the disbursement was made by the clerk on July 21, which was 83 days prior to the bankruptcy filing. *Id.* The court concluded that "whatever claims the Debtor had to the insurance proceeds were extinguished, at the latest, on the entry date of the Agreed Final Judgment." *Id.* The date of the Agreed Final Judgment was 95 days prior to the bankruptcy filing. *Id.* Furthermore, the bankruptcy court added that "[t]he execution of the Agreed Final Judgment constituted an assignment of whatever rights the Debtor had in the interpleader finds of the other defendants." *Id.* "[A]n assignment of rights is effective when the assignment by judgment was made." *Id.* Therefore, "a transfer occurs on the date the contractual right to payment is assigned, not on the date payment is actually made or collected." *Id.* at

---

18. In summary, a synopsis of key dates in *In re Gibraltar* is as follows:

| May 27, 1993: | Interpleader action filed by Insurance Company |
| July 9, 1993: | Agreed Final Judgment entered |
| July 14, 1993: | 90 days prior to bankruptcy filing |
| July 21, 1993: | Court clerk made interpleader distribution |
| October 12, 1993: | Involuntary chapter 7 bankruptcy petition filed |

*In re Gibraltar*, 197 B.R. at 248.

250, citing *In re Adventist Living Centers, Inc.*, 174 B.R. 505, 512 (Bankr.ND.Ill.1994). In other words, the date that the final judgment was entered is deemed the "latest date the transfer was perfected" because this is the day that the debtor's rights to the funds were technically extinguished. *See id.*

The Court considers both the dates and facts in *Gibraltar* to be remarkably similar to the current matter before the Court.[19] Both involved interpleader funds, chapter 7 debtors, and chapter 7 trustees. *Id.* at 248–49. The Court notes, however, that in *Gibraltar* the interpleader action was filed in federal court as compared to the Norshipco action that was filed in state court. *Id.* However, this does not lessen the reasoning and impact of *Gibraltar* from controlling because persuasive to the Court is the fact that the interpleader action was in the context of a § 547(b) preference action, which is a federal law cause of action. Another similarity between the two is that the final judgment in *Gibraltar* stated that "all claims by and among all the defendants regarding the Fund are resolved." *Id.* at 249. This language is comparable to the language in the Norfolk Circuit Court final decree which stated that "any claims filed by defendant Professional

Coatings (North America), Inc. are hereby dismissed with prejudice."

In light of the similarity in facts to the current matter and its logical analysis, the Court concludes that the reasoning in *In re Gibraltar* should control the instant matter. As "a transfer occurs on the date the contractual right to payment is assigned, not on the date payment is actually made or collected" and as "an assignment of rights is effective when the assignment by judgment was made," the Court concludes that the transfer occurred on the date that the final decree was entered by the Norfolk Circuit Court. *See id.* at 250. The transfer was not consummated on the date that the funds were deposited by Norshipco, nor was the transfer the day that the funds were disbursed by the Clerk. Rather, the transfer was made on December 7, 1995. Therefore, the alleged avoidable preference occurred within 90 days of the filing of the bankruptcy petition on December 14, 1995.[20]

## CONCLUSION

In conclusion, the Court holds that the defendants have not met their burden of proving that res judicata and collateral estoppel prevail to make the findings of the Nor-

---

**19.** Notwithstanding the similarities, the Court notes a glaring difference between *In re Gibraltar* and the current matter. The final order affecting the debtor's rights in *In re Gibraltar* was signed and consented to by the debtor, whereas PCNA did not sign nor consent to the final decree in this matter. See *In re Gibraltar*, 197 B.R. at 250. However, while it is disputed as to what transpired at the December 7 hearing that resulted in the entering of the final decree, it is undisputed that PCNA did not appear to represent their rights. The failure of PCNA to appear at the hearing is tantamount to its consent of the adjudication of the outcome of the interpleader funds.

**20.** As outlined *supra*, the Court has concluded that the doctrines of res judicata and collateral estoppel do not apply to preclude litigation of the issue as to whether the debtor has an interest in the funds transferred by reason of the entry of the final decree in the state court litigation. However, notwithstanding this Court's earlier determination that the final decree entered in the Circuit Court of the City of Norfolk does not bind the Court in the determination of whether the funds transferred were property of the debtor, there is no factual dispute as to the occurrence of

the events surrounding the original deposit of the monies in the Circuit Court of the City of Norfolk and the subsequent disbursement of the $750,-163.60 pursuant to the final decree entered in the state court litigation. Therefore, while the interest of the debtor in the funds was not conclusively determined by the final decree for the reasons earlier stated and for the purposes of this preference litigation only, it is undisputed that the funds were deposited on a date certain and ultimately disposed of by entry of the final decree.

Accordingly, despite its inability to rely upon the final decree for the determination of the issue of the interest of the debtor in the funds, the Court may properly rely upon the undisputed fact that the entry of the final decree caused the transfer of the funds. From there, the Court can determine that the legal consequences of the final decree entry is to cause the timing of the transfer for the purposes of § 547(b)(4)(A) to have occurred within 90 days of the date of the filing of the bankruptcy petition on December 14, 1995. However, it remains the ultimate burden of the trustee to establish that the funds transferred by reason of the final decree were subject to an interest of the debtor. 11 U.S.C. § 547(g); *In re Springfield Contracting Corp.*, 154 B.R. at 221.

folk Circuit Court's final decree applicable to this Court's proceeding. The Court rules that certain facts essential to the adjudication of this matter have not been sufficiently litigated before this Court. Therefore, a genuine issue as to a material fact in the underlying matter remains. Moreover, because the defendants have not proved to the Court by a preponderance of the evidence that the trustee's § 547(b) claim is without merits, the defendants are not entitled to a judgment as a matter of law. Therefore, the defendants' Motion for Summary Judgment is DENIED.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record for the various parties.